No. 37,526

ANDERSON-PRICHARD OIL CORPORATION, *Appellant*, v. THE UN-KNOWN SUCCESSORS, TRUSTEES AND ASSIGNS OF OKLAHOMA ROYALTY CORPORATION (a corporation formerly organized under the Laws of the State of New York, now dissolved), *Appellees*.

(207 P. 2d 417)

Opinion filed June 11, 1949.

*W. H. Brown,* of Oklahoma City, Okla., and *James A. Cassler,* of McPherson, argued the cause, and *Paul A. Lackie, John K. Bremyer,* both of McPherson, *Paul G. Darrough* and *Virgil R. Ball,* both of Oklahoma City, Okla., were with them on the briefs for the appellant.

*George R. Lehmberg,* of McPherson, argued the cause, and *J. R. Rhoades,* of McPherson, *J. G. Somers* and *Arthur N. Turner,* both of Newton, were with him on the briefs for the appellees.

The opinion of the court was delivered by

SMITH, J.: The petition stated three causes of action. Service by publication was had on the defendants. Judgment was entered by default for the amount asked on all three causes. Subsequently successors in interest to defendants filed a motion to open up the judgment, and an answer. The trial court allowed this motion. Plaintiff has appealed.

The first cause of action, after alleging the corporate existence of the plaintiff, alleged that the Oklahoma Royalty Corporation was organized under the laws of New York, had never qualified to do business in Kansas, and on December 15, 1936, was dissolved, as provided by law, in New York, and no longer had any legal existence; that plaintiff made diligent inquiry to ascertain its successors or assigns, but was unable to find them, and plaintiff made the unknown successors of the dissolved corporation defendants in the action; that about March 6, 1928, during the legal existence of the Oklahoma Royalty Company it acquired a one-sixteenth interest in all the oil rights under a described quarter section of land in McPherson county, had never disposed of it and the unknown successors of the dissolved corporation were still the owners of this interest; that about March 16, 1934, in the City Court of Buffalo a judgment

for $224.30 was entered against the Oklahoma Royalty Corporation and still remained unpaid; that after this judgment was obtained a transcript of it was filed with the clerk of the supreme court of Erie county, New York, on March 19, 1934, and still remained unpaid; that this judgment was assigned to plaintiff on December 27, 1944, and plaintiff was at the time of filing the action the owner of it and it had not been paid and there remained due on it $372.90, for which the plaintiff prayed judgment.

For its second cause of action, the plaintiff made the allegations of the first paragraph of the first cause a part and then alleged a judgment in the supreme court of Erie county, New York, against the Oklahoma Royalty Company on September 26, 1933, in the amount of $1,291.37; that it remained unsatisfied, had been assigned to plaintiff and there was due on it $2,183.48, for which judgment was prayed.

For its third cause of action, plaintiff after its formal allegations, alleged that about March 6, 1942, it procured an oil and gas lease on a described quarter section and it was later discovered that the Oklahoma Royalty Company owned an undivided one-sixteenth interest in the oil under the land; that plaintiff was unable to find anyone connected with the company; that on account of such a situation it was impossible for the plaintiff to procure an oil and gas lease from the owners of this one-sixteenth interest; that plaintiff believed it was necessary to drill on the land, drilled four wells on the lease and discovered oil therein; that in drilling and operating these wells expenses amounting to $83,014.23 had been incurred by plaintiff; that this expenditure had enhanced the value of the lease and plaintiff was entitled to be reimbursed in the amount of one-sixteenth of the expenditure and such reimbursement should be made as proceeds are available; that one-sixteenth of the total expenses properly chargeable to the Oklahoma Royalty Company as of April 1, 1945, was $5,188.39; that Phillips Petroleum Company was holding large sums of money to be paid to the owners of the undivided one-sixteenth interest; that to allow defendants to collect this one-sixteenth without paying its share of the operating would be unjust and inequitable; that plaintiff was entitled to a judgment against defendants fixing a lien upon the one-sixteenth interest for operating expenses, and to have the amount of the proceeds from the sale of the one-sixteenth interest applied on liquidation of the one-sixteenth expense.

The prayer was for a judgment ordering that one-sixteenth of the operating costs be made a lien against the undivided one-sixteenth interest and from this undivided one-sixteenth interest defendants be required to pay plaintiff one-sixteenth of the operating expense amounting to $5,188.39 as of April 1, 1945, and one-sixteenth of all subsequently incurred expense.

Service of summons was had on the Oklahoma Royalty Company by publication. On the same day the petition was filed an affidavit for attachment was filed and an attachment order was issued attaching the one-sixteenth interest in the oil and gas heretofore spoken of as to the first and second causes of action. On the same day a garnishment affidavit was filed against the Oklahoma Royalty Company stating that it owed plaintiff $5,188.39 and the Phillips Petroleum Company was indebted to it. On the same day an order of garnishment was issued against the Phillips Petroleum Company. This was in the third cause of action. Summons was duly issued in the garnishment proceedings and on May 21, 1945, the Phillips Petroleum Company answered that it was indebted to the Oklahoma Royalty Company in the amount of $3,518.77, which it was holding in suspense. After the attachment proceedings were begun an order was issued, the sheriff executed it, attaching the one-sixteenth interest and appointing appraisers. The interest was duly inventoried and appraised at $5,000 on April 30, 1945.

June 6, 1945, the affidavit to obtain service by publication setting out all the above facts was filed. Service by publication was duly had.

On September 1, 1945, judgment for $2,556.38, the amount prayed for in causes of action 1 and 2, was entered and it was ordered that the attachment of the one-sixteenth interest was sustained and a first lien in favor of plaintiff for the amount of the intebtedness be established upon the one-sixteenth interest and the one-sixteenth interest was ordered sold or so much of it as might be necessary to satisfy the judgment free and clear of all incumbrances except a lien upon the proceeds derived from the sale of oil and gas produced and sold from the one-sixteenth interest for the payment of one-sixteenth of the operating expenses and the proceeds of the sale be applied (1) to the payment of costs; (2) to the payment of the judgment of $2,556.38 and the remainder be paid to the clerk of the court. It was further ordered that plaintiff have a lien on the proceeds from the sale of the one-sixteenth interest for the one-

sixteenth of the drilling cost to plaintiff. It was further ordered that there was due plaintiff from defendants by reason of the development of the lease the sum of $5,415.52, the amount being one-sixteenth of the amount expended by plaintiff in developing the lease, and it was ordered that plaintiff recover from the Phillips Petroleum Company, garnishee, the sum of $3,518.77, the indebtedness that the Phillips Petroleum Company owed the Oklahoma Royalty Company, the sum to be applied on the $5,415.52 owing plaintiff; that plaintiff have a first lien upon the oil and gas produced from the one-sixteenth interest (1) for the balance remaining unpaid on the $5,412.52 and for the one-sixteenth of all expense of operating the lease subsequent to June 30, 1945; that the one-sixteenth interest was ordered sold by the sheriff and on November 5, 1945, it was sold to plaintiff for $3,335, that being the highest bid. December 4, 1945, the sale was confirmed and the equity of redemption was fixed at six months.

On December 19, 1947, John W. Kuntz, Fred Davison and Harold McVean, as president and board of directors of the dissolved Oklahoma Royalty Company, filed an amended motion to open the judgment and an amended answer. A motion to strike portions of the motion and the answer and a demurrer to the answer were filed by plaintiff. The motions and demurrer were overruled and the judgment was ordered reopened and all orders made thereunder were set aside. Hence this appeal.

The specifications of error are that the court erred in overruling plaintiff's motion to strike and its demurrer, in reopening the judgment, and setting aside all orders made thereunder, and granting defendants the right to come in and defend against plaintiff's petition.

These specifications may all be dealt with in a consideration of the demurrer to the answer. The proceedings to open up the judgment were brought pursuant to G. S. 1935, 60-2530. This section provides, in part, as follows:

"A party against whom a judgment or order has been rendered, without other service than publication in a newspaper, may, at any time within three years after the date of the judgment or order, have the same opened, and be let in to defend. Before the judgment or order shall be opened the applicant shall give notice to the adverse party of his intention to make such an application, and shall file a full answer to the petition, pay all costs, if the court require them to be paid, and to make it appear to the satisfaction of the court, by affidavit, that during the pendency of the action he had no actual notice thereof in time to appear in court and make his defense; . . ."

Stated more succinctly, a defendant who wishes to open up a judgment that was entered against him without other service than publication in a newspaper must (1) give notice to the adverse party; (2) file a full answer to the petition; (3) pay all costs, if the court requires it; and (4) make it appear by affidavit that during the pending of the action he had no actual notice of it in time to appear in court and make his defense. There is no question here but that the defendants have complied with 1, 3 and 4. The real question, however, is whether the answer filed is in the words of the statute a "full" answer. A full answer has been otherwise described as meritorious. (See *Durham v. Moore,* 48 Kan. 135, 29 Pac. 472.) A "meritorious" defense has been defined as "one going to the substance or essentials of the case" as alleged in the petition. (See *Frizell v. Northern Trust Co.,* 144 Kan. 481, 61 P. 2d 1344.) It may be said a full answer is one which had it been filed in answer to the petition would have constituted, if proven, a defense to cause or causes of action alleged in the petition. In this connection it should be pointed out here that an answer to be a full answer "need not present a defense coextensive with the entire demand, or with every demand, or with every demand of the petition but whatever defense it proposed must be complete and perfect in the sense of fully overcoming the portion of the plaintiffs claim against which it is directed." (See *Williams v. Kiowa County,* 74 Kan. 693, 88 Pac. 70.) At the outset, it should be noted that we give this statute a broad interpretation so as to do justice to both sides. (See *Leslie v. Gibson,* 80 Kan. 504, 103 Pac. 115.)

With these rules in mind, we shall examine this answer. It will be remembered that causes of action 1 and 2 were to collect New York judgments. The third was to collect from defendants their fair share of the money expended in developing the lease.

It will be remembered the action was begun against the unknown successors, trustees and assigns of a dissolved corporation. The first paragraph of the amended answer set out the names and addresses of the last president and three members of the board of directors of the Oklahoma Royalty Company. The next paragraph referred to a statute of New York, which provides that ". . . Upon the dissolution of a corporation . . . its corporate existence shall continue for the . . . collecting or distributing its assets, . . . and it may sue and be sued in its corporate name, and . . . the directors shall have full power to settle its affairs

and to distribute to the persons entitled thereto the assets . . ."
This motion to open up this judgment was filed and is being carried on by the named members of the board of directors.

The first ground urged by plaintiff upon which their demurrer should have been sustained is that the answer failed to show that the three directors had the legal capacity to appear and act as defendants and to have the judgment opened. This argument is not seriously urged by plaintiff here and is not good. The proceedings are being carried on in about the only way they can be, that is, by the persons who were in control of the corporation when it was dissolved. The statute was, no doubt, intended to apply to situations such as we have here.

The third paragraph of the amended answer alleged that service was had on the defendants by publication service only and reference is made to affidavits attached to the original motion showing that the parties asking to have judgment opened up had no actual notice of the pendency of the action in time to appear in court and defend. G. S. 1935, 60-2530, provides, among other things, that a judgment may be opened up only if the defendant is able to show that the service on it was by publication and that he had no actual notice of the pendency of the action. These allegations met that requirement.

We pass then to a consideration of the allegations of the answer which purport to set up a good defense to the cause of action.

Paragraph 4 is a general denial. Ordinarily a general denial is a good defense to any cause of action. In this case, however, we must consider it in connection with the other allegations.

Paragraph 5 admitted the allegations of paragraph 5 of the first cause of action, which set up the judgment of $224.30 against the Oklahoma Royalty Company and alleged that it was entered on the 16th day of March, 1934.

Paragraph 6 admitted that a verdict was rendered against the Oklahoma Royalty Corporation on September 26, 1935, in the Supreme Court of Erie county, New York, in favor of the parties mentioned in the second cause of action. The paragraph denied, however, that any judgment entered was valid but alleged that it was void and was still an appealable order.

Paragraph 7 of the amended answer referred to the two judgments upon which the first two causes of action were based and alleged they were dormant and of no force and effect.

Paragraph 8 alleged that if they owed plaintiff any money they should be granted the right to pay it.

Paragraph 9 of the amended answer admitted that the Oklahoma Royalty Corporation during its existence acquired the one-sixteenth interest in question and alleged that it had never disposed of it and the answering parties were still the owners.

Paragraph 10 of the amended answer admitted plaintiff has drilled certain oil wells in which defendants have an interest without their consent and the number of wells drilled is unknown to defendants but known to plaintiff.

Paragraph 11 of the amended answer referred to the third cause of action and alleged the Oklahoma Royalty Corporation was chargeable with the one-sixteenth of the cost of drilling and operating the lease, but alleged plaintiff should be required to make an accounting of such cost and of the oil produced to which the Oklahoma Royalty Corporation was entitled, and since defendants did not know whether the accounting set out in plaintiff's petition was correct the allegations were denied.

Paragraph 12 of the amended answer referred to the second cause of action and alleged the judgment upon which it was based was not entered on the judgment rolls of the Supreme Court of Erie county, New York, until January 17, 1945, and was so entered without any notice to defendants and the entry of the judgment was twelve years after the verdict was rendered, was fraudulent and void, and under the laws of New York was still appealable, and the entering of it twelve years after the verdict did not extend the statute of limitations and judgment was not a lien on the real property of Oklahoma Royalty Corporation.

Paragraph 13 stated that under section 203-A of the Stock Corporation Laws of New York, the only remedy for any creditor enforcing any claims against the Oklahoma Royalty Corporation was to follow the procedure set out in section 106 of the Stock Corporation Laws of New York.

Paragraph 14 of the amended answer set out a portion of section 106 of the Stock Corporation Laws of New York. We do not find it necessary to set out those provisions here.

Paragraph 15 alleged that plaintiff did not comply with the provisions of the Laws of New York for the enforcement of judgments and the collection of claims against the Oklahoma Royalty Corporation.

Paragraph 16 alleged that the action was begun April 28, 1945, and judgment was entered September 1, 1945; that the value of the one-sixteenth interest was appraised at $5,000; that prior thereto the court had ordered that the Oklahoma Royalty Corporation owed $5,415.52 for their one-sixteenth of the drilling expense and on September 29, 1945, an order of sale was issued directing the sale of the one-sixteenth interest and on November 5, 1945, it was sold to plaintiff for $3,335 and the period of redemption was fixed at six months and the sale was approved.

Paragraph 17 of the amended answer alleged that the real value of the one-sixteenth interest was $50,000 and the appraisement was grossly inadequate and unless the judgment was opened up the moving parties would suffer irreparable injury, and at the time of the filing of the answer the plaintiff had twelve producing wells on the lease and it was producing $20,000 worth of oil each month.

Paragraph 18 of the amended answer alleged that at the time when plaintiff purchased the judgments it had drilled four wells on the lease, and to the first of May, 1945, had produced $56,000 worth of oil and one-sixteenth of such amount would be $3,518.77, which had been applied through garnishment proceedings to the claim of plaintiff for drilling costs, yet in spite thereof the one-sixteenth interest was appraised at $5,000 and sold to plaintiff for $3,335.

Paragraph 19 of the amended answer alleged that at the time it purchased the two judgments it did not advise the holders of them that it was producing oil from the property and the plaintiff fraudulently and with intent of carrying the action to completion without knowledge of the answering defendants failed to inform the defendants of the pendency of the action.

Paragraph 20 alleged that defendants offered to pay all costs of any judgment to which they might find the plaintiff was entitled under the first and second causes of action.

Paragraph 21 alleged that defendants were entitled to have the judgment opened and all orders made by the court vacated and upon finding that defendants owed plaintiff anything they should be granted the right to pay same and that defendants should be fully advised as to the third cause of action and any amount found due on the third cause of action should be only a lien against one-sixteenth of the oil and gas produced from the lease.

Paragraph 22 alleged defendants had no adequate remedy at law and if the relief prayed for was not granted defendants would suffer irreparable injury.

The prayer of the answer was that the judgment be opened up; that the appraisement of the real estate, the sale, the confirmation of the sale, the period of redemption and the sheriff's deed be held for naught; that the defendants be afforded an opportunity to pay any sums found due plaintiff on the first and second causes of action and that they be fully apprised of any amount due for drilling on the lease, as set out in the third cause of action, and that such amount found due be decreed only as a lien against the oil and gas produced from the one-sixteenth interest belonging to the Oklahoma Royalty Corporation.

This answer must be considered as though it had been filed against the petition in the first place, that is, does it on its face state a prima facie answer to the cause of action pleaded in the petition? No motion to make this answer more definite and certain was filed. Under such circumstances it should be liberally construed and all reasonable inferences drawn in favor of the pleader. (See *Roberts v. Pendleton,* 92 Kan. 847, 142 Pac. 289; also *Rust v. Rutherford,* 95 Kan. 152, 147 Pac. 805.) We must consider this appeal in the light of what we said in *Albright v. Warkentin,* 31 Kan. 442, 2 Pac. 614. There we said:

"Indeed, in order to do justice to both parties, the provisions of that section should be construed in no technical way, but fairly and reasonably. . . . In fact, a judgment upon service by publication is as between the parties in the nature of a conditional judgment, one which becomes final and absolute only at the expiration of three years, and liable in the mean time to be opened whenever the defendant brings himself within the provisions of the section." (p. 448.)

See, also, *Withers v. Miller,* 140 Kan. 123, 34 P. 2d 110, where we also said:

"Our statute (R. S. 60-2530), which authorizes a party defendant in an action such as this, who was served by publication only and who had no knowledge of the pendency of the action in time to defend, to come into the case at any time within three years after judgment against him was rendered, make the showing required and file an answer stating a defense, to have the judgment opened and to be heard on his defense, is remedial in its nature, and should be liberally construed in the furtherance of justice." (p. 126.)

(We cited *Young v. Martin,* 96 Kan. 748, 153 Pac. 542; *Chambers v. Rose,* 111 Kan. 22, 206 Pac. 336; *Martens v. Green,* 113 Kan. 142,

213 Pac. 642; and *Wyandotte County Comm'rs v. Axtell,* 134 Kan. 304, 5 P. 2d 1078.)

At the outset of the answer, there is a general denial of the allegations of the petition except as are later admitted. Ordinarily this would be held to state a defense unless by the subsequent admissions the defendants admitted liability or admitted facts requiring a holding of liability. So here the general denial will not be held to state an absolute defense. It must be considered, however, along with other allegations in the answer. The first two causes of action are on judgments from Buffalo, N. Y. The petition simply alleged the judgments, their assignment to plaintiff and the amount of each. The answer admits the judgments were entered but alleged that each judgment was void, dormant and of no force and effect. It is well established that an action cannot be brought to collect a dormant judgment. (See 34 C. J. 1081; *Smalley v. Bowling,* 64 Kan. 818, 68 Pac. 630; also *Brown v. Akeson,* 74 Kan. 301, 86 Pac. 299.) A void judgment cannot be made the basis of an action. (See 34 C. J. 1083.) Plaintiff concedes the force of these rules but argues that the allegations of defendants are nothing but conclusions and that the specific allegations in the answer on which these conclusions are based require a holding by us that the judgments are neither dormant nor void. We have already referred to the rule that in the absence of a motion to make definite and certain an answer, the same as any other pleading, should be given a liberal interpretation and all reasonable inferences drawn and presumptions made in favor of the pleader. We have said the purpose of this statute is to see justice done between the parties. (See *Leslie v. Gibson,* 80 Kan. 504, 103 Pac. 115; also *Erving v. Windmill Co.,* 52 Kan. 787, 35 Pac. 800.) Our question really is whether a demurrer to this answer would have been sustained had it been filed in answer to the petition in the regular way and at the proper time. To answer this question in the affirmative would require us to hold that the judgments pleaded were actually valid judgments and capable of immediate enforcement in New York. Certain portions of the New York statutes are pleaded in the answer, as well as the facts of the judgments to which reference has been made. The fact that the verdict upon which one judgment was based was returned in 1933 and the judgment was not entered until January, 1945, and that the other judgment was entered in the city court of Buffalo in 1934, over ten years before it was assigned to plaintiff,

at least subject both these judgments to close scrutiny. What the outcome of a trial of the issues raised by the pleadings would be we are not called on to say here. Suffice it to say that the answer filed by the defendants does not on its face require a holding that the two New York assignments were valid subsisting judgments.

We pass now to a consideration of the answer to the third cause of action. Plaintiff alleged it had expended a certain amount in developing the lease in which defendants had a one-sixteenth interest and that one-sixteenth of the income from the lease had been held for defendants. Plaintiff asked that defendants be held liable for one-sixteenth of the development cost.

Defendants in their answer admitted that they should be required to pay one-sixteenth of the cost of development but asked for an accounting. They had no way of knowing whether the figures used by plaintiff in its petition were correct. They were not required to accept them as correct. Defendants did the only thing they could do under the circumstances. They admitted they owed plaintiff something but denied the correctness of the amount pleaded by plaintiff. This is what they would have done had they filed their answers in the regular way and in due time.

As to the third cause of action, it was a full answer.

We have held and the rule is that an answer to be a full answer need not present a defense to the entire claim of plaintiff or co-extensive with the entire demand. (See *Williams v. Kiowa County*, 74 Kan. 693, 88 Pac. 90.) Here there can be no doubt but that the judgment was properly opened up as to the third cause of action.

Plaintiff argues that to hold this answer good would be to deny in Kansas full faith and credit to a judgment of the state of New York in violation of section 1, article IV of the Constitution of the United States. The section does require that a judgment of a court of one state be given full faith and credit in another state, but no better than it was in the state in which it was rendered. The authorities cited and relied on by plaintiff are to that effect. What we are holding here is that the two New York judgments are subject to the same defenses in Kansas to which they would have been subject in New York. Such a holding is in harmony with the decisions of the Supreme Court of the United States, where the subject has been passed on.

Plaintiff next argues that the trial court erred in ordering the judgment reopened and in setting aside all orders made thereunder.

In this connection reference is made to the attachment orders, pursuant to which the one-sixteenth interest was sold. When the judgment is opened up the entire proceedings will revert back to the state where it was the first time for the defendants to file their answer. What the outcome will be no one knows. Certainly the property should not be sold to satisfy a judgment until there is a judgment. If plaintiff sees fit to institute other attachment proceedings to preserve its interest that need not concern us here.

The judgment of the trial court is affirmed.

THIELE and WEDELL, JJ., concur in the result.