No. 44,046

A. D. Campbell and Ava Campbell, *Appellees*, v. (Nako Corporation, a foreign corporation, B. W. Klippel and Alleen P. Klippel, Joe Sutcliffe, d/b/a Sutcliffe Pipe and Supply, Carl Pate, d/b/a Oilfield Research Laboratories, Leslie P. Baker and State of Kansas Labor Department, Employment Security Division, Defendants); B. W. Klippel and Alleen P. Klippel, *Appellants*.

(402 P. 2d 771)

Opinion filed June 12, 1965.

*Hal B. Malone,* of Wichita, argued the cause, and *Harold H. Malone,* of Wichita, was with him on the brief for the appellants.

No appearance for appellees.

The opinion of the court was delivered by

HARMAN, C.: This is an appeal from an order of the trial court refusing to open up a judgment cancelling an oil and gas lease, rendered on publication service against the owner of an overriding royalty interest in the lease.

The lease was originally executed in 1907 to extend for a term of ten years and so long thereafter as oil and gas is produced in paying production. It appears to have been one held by production and was acquired by Nako Corporation, an Illinois corporation, in 1961, subject to a retained one-sixteenth ($\frac{1}{16}$) of seven-eighths ($\frac{7}{8}$) working interest in the Texas Western Corporation, a Missouri corporation. The latter conveyed its interest, commonly known and referred to as an overriding royalty interest, to appellants, B. W. Klippel and Alleen P. Klippel, on March 23, 1962, by assignment duly recorded.

On October 2, 1962, the landowners, appellees herein, filed their petition in the district court, seeking to cancel the lease and naming as defendants therein the Nako Corporation, the Klippels, and certain other record lienholders against the lessee with whom we are not presently concerned. The landowners will be referred to hereinafter as the appellees and the Klippels as the appellants.

Highly summarized, the petition alleged breach of implied production and development covenants by Nako Corporation in several respects with less production than that which the property was reasonably capable of up to September 1, 1962, repeated forfeiture notices to Nako, and further, that at the time of the filing of the action the lease was shut down and not operating and abandoned by defendants. The petition recited the overriding royalty interest of the appellants and the prayer was that defendants be cited to appear and answer and that upon final hearing the lease be terminated and cancelled.

Nako was served by summons upon its resident agent; service upon appellants was obtained by publication. Thereafter, Nako filed a special appearance and motion to quash service of summons which was overruled. Then Nako filed an answer in the form of a general denial. Appellants made no appearance of any kind. On February 18, 1963, judgment against all defendants was entered can-

celling the oil and gas lease, the decree reciting ". . . although having been properly served defendants do not appear."

April 1, 1964, appellants filed their verified application to open the judgment rendered against them on publication, alleging they had no actual knowledge of the pendency of the action and that they had a meritorious defense thereto, as set forth in their answer, and offering to pay costs if required, pursuant to K. S. A. 60-309 ($a$) which provides:

"($a$) *Procedure.* A party against whom a judgment has been rendered without other service than publication in a newspaper, may, at any time within two (2) years after the entry of the judgment, have the same opened and be let in to defend. Before the judgment may be opened the applicant shall give notice to the adverse party of his intention to make such an application and shall file a full answer to the petition, pay all costs if the court require them to be paid, and make it appear to the satisfaction of the court by affidavit that during the pendency of the action he had no actual notice thereof in time to appear in court and make his defense. The adverse party on the hearing of the application may present counter affidavits."

The appellants' proffered answer contained the following:

"3. These answering defendants further admit the allegations contained in Paragraph 3 of plaintiff's said petition and allege they paid Nineteen Thousand Dollars ($19,000.00) for said one-sixteenth ($\frac{1}{16}$) of one-eighth ($\frac{1}{8}$) overriding royalty interest.

"5. For further answer these defendants state that defendant Nako was operating said lease diligently and prudently, and that the equipment thereon was adequate and suitable for production and that the drilling of additional wells would have been economically wasteful and that plaintiffs were actually receiving the maximum capacity of their landowner's royalty therefrom.

"6. That unknown to these answering defendants, but well known to plaintiffs, the defendant Nako Corporation was temporarily involved in internal corporate dissension, the nature of which was unknown to these defendants, and that plaintiffs, through collusion with the faction in control of said Nako, obtained said judgment by default, thus depriving these answering defendants of their interest therein. These defendants are informed that said plaintiffs entered into some pre-arranged plan to execute a new lease to said faction in control in the event the said lease should be cancelled.

"7. These answering defendants specifically deny that said lease was abandoned, and that they do not know whether, at the time of the filing of the suit, the lease was completely shut down, but allege that if so, said condition was only temporary, which fact was well known to the plaintiffs herein.

"8. For further answer, these defendants state and allege that the only service had on them was by publication and that these defendants had no actual notice of the pendency of this action in time to appear in court to defend. These defendants attach hereto as Exhibit 'A,' a copy of their application to open judgment herein and make it a part hereof by reference.

"9. These defendants herewith offer to pay all costs of this action to which the court might find plaintiffs entitled.

"10. These defendants have no adequate remedy at law and will suffer irreparable injury if subject lease is held abandoned and terminated and if they are not let in to defend this action.

"WHEREFORE, these defendants, having fully answered, pray that the judgment herein be opened up and that these defendants be allowed to defend and for such further relief as to the court seems proper."

The trial court found that appellants during the pendency of the action did not have actual notice thereof in time to appear in court and make their defense, but concluded that they were not indispensable or necessary parties to the action and expressed doubt that they were even proper parties, and that by reason of their relationship to the lessee as overriding royalty holders were to be considered privy to the decree already rendered against the lessee and thereby precluded from reopening a controversy once adjudicated. The court found that for these reasons the proffered answer was not a full answer to the appellees' cause of action, did not state a defense thereto, and accordingly denied appellants' application to reopen the judgment.

Appellants contend the court erred in so doing and in finding that appellants failed to file a full answer to appellees' cause of action.

Thus it will be seen the controversy hinges upon whether or not the answer filed by appellants is to be deemed a full answer in accordance with K. S. A. 60-309 (a).

In *Williams v. Kiowa County*, 74 Kan. 693, 88 Pac. 70, in considering what constituted a full answer, this court said:

"An answer filed in connection with an application to open a judgment rendered without other service than by publication must be full and complete as a pleading by the defendant in the cause. It need not present a defense coextensive with the entire demand, or with every demand, of the petition, but whatever defense it proposes must be complete and perfect in the sense of fully overcoming the portions of the plaintiff's claim against which it is directed; and it must subvert sufficient of the cause of action set forth in the petition to make it worthy of consideration in the doing of substantial justice between the parties." (Syl. ¶ 1.)

Again in *Anderson-Prichard Oil Corp. v. Unknown Successors, etc., Okla. Royalty Corp.*, 167 Kan. 432, 207 P. 2d 417, in discussing a like problem the court stated:

"A full answer has been otherwise described as meritorious (See *Durham v. Moore*, 48 Kan. 135, 29 Pac. 472.) A 'meritorious' defense has been defined as 'one going to the substance or essentials of the case' as alleged in the peti-

tion. (See *Frizell v. Northern Trust Co.*, 144 Kan. 481, 61 P. 2d 1344.) It may be said a full answer is one which had it been filed in answer to the petition would have constituted, if proven, a defense to cause or causes of action alleged in the petition . . . At the outset, it should be noted that we give this statute [G. S. 1949, 60-2530, now K. S. A. 60-309 (*a*)] a broad interpretation so as to do justice to both sides. (See *Leslie v. Gibson*, 80 Kan. 504, 103 Pac. 115.)" (p. 437.)

Before going to the merits of the case it may be well to examine the nature of the interest involved. Typically, the term "overriding royalty" is used to describe a royalty carved out of the working interest created by an oil and gas lease. Most frequently it is created subsequent to a lease by outright grant or by a reservation in the assignment of the operating rights. It is an interest in oil and gas produced at the surface, free of the expense of production and its outstanding characteristic is that its duration is limited by the duration of the lease under which it is created. (See 3 Summers, Oil and Gas, perm. ed., § 554.) In Kansas any covenants in the instrument creating it are not covenants running with the land (*Nigh v. Haas*, 139 Kan. 307, 31 P. 2d 28), and such interest is not an interest in land but is personal property. (*Connell v. Kanwa Oil, Inc.*, 161 Kan. 649, 170 P. 2d 631.)

Let us examine the answer further. It first alleges the appellants paid $19,000.00 for the overriding royalty; that the lessee, Nako, was operating the lease diligently and prudently and that appellees were actually receiving the maximum capacity of their landowner's royalty; then that unknown to appellants, but well known to appellees, Nako was temporarily involved in internal corporate dissension, and that appellees, through collusion with the faction in control of Nako, obtained the forfeiture decree by default, and that appellees had a pre-arranged plan to execute a new lease to the faction in control of Nako after forfeiture of Nako's lease, thus depriving appellants of their interest therein. Then appellants denied that the lease was abandoned and stated that if it was shut down at the time of the filing of the suit, that said condition was only temporary, which fact was well known to appellees. Appellants say they have no adequate remedy at law and will suffer irreparable damage if the lease is terminated finally and they are not let in to defend.

It is to be noted this was a lease held by production over a long period of time with eight completed wells (although one not placed on pump) and eleven injection wells. Necessarily there were reserves of value. Appellants allege they paid $19,000.00 for their

interest on March 23, 1962. There was some production in fact up to September 1, 1962. The suit to cancel was filed October 2, 1962, thirty-one days thereafter. The suit was for immediate and not for conditional cancellation. Such suit has been held to be subject to the application of equitable principles. (See, *Renner v. Monsanto Chemical Co.*, 187 Kan. 158, 354 P. 2d 326.)

The crux of appellants' answer is contained in paragraph 6 above quoted. There they say that appellees through *collusion* with a faction in control of Nako obtained the initial judgment by default, having entered into a pre-arranged plan to execute a new lease to said faction.

Do these allegations entitle them to any relief? While we recognize some degree of speculation is necessarily involved in their purchase, appellants say they paid a substantial price for an interest in a going operation. They say they have been deprived of that interest through collusion.

In Black's Law Dictionary, 4th ed., the term *collusion* is defined as follows:

". . . an agreement between two or more persons to defraud a person of his rights by the forms of law, or to obtain an object forbidden by law. It implies the existence of fraud of some kind, the employment of fraudulent means, or of lawful means for the accomplishment of an unlawful purpose . . .,"

and

"A secret arrangement between two or more persons, whose interests are apparently conflicting, to make use of the forms and proceedings of law in order to defraud a third person, or to obtain that which justice would not give them, by deceiving a court or its officers." (p. 331.)

In *Anderson-Pritchard Oil Corp. v. Unknown Successors, etc., Okla. Royalty Corp.*, supra, again in consideration of that which constitutes a full answer, it was said:

"This answer must be considered as though it had been filed against the petition in the first place, that is, does it on its face state a prima facie answer to the cause of action pleaded in the petition? No motion to make this answer more definite and certain was filed. Under such circumstances it should be liberally construed and all reasonable inferences drawn in favor of the pleader. (See *Roberts v. Pendleton*, 92 Kan. 847, 142 Pac. 289; also *Rust v. Rutherford*, 95 Kan. 152, 147 Pac. 805.) We must consider this appeal in the light of what we said in *Albright v. Warkentin*, 31 Kan. 442, 2 Pac. 614. There we said:

" 'Indeed, in order to do justice to both parties, the provisions of that section should be construed in no technical way, but fairly and reasonably. . . . In fact, a judgment upon service by publication is as between the parties in the nature of a conditional judgment, one which becomes final and absolute only

at the expiration of three years, and liable in the meantime to be opened whenever the defendant brings himself within the provisions of the section.' (p. 448.)

"See, also, *Withers v. Miller*, 140 Kan. 123, 34 P. 2d 110, where we also said:

" 'Our statute (R. S. 60-2530), which authorizes a party defendant in an *action such as this, who served by publication only* and who had no knowledge of the pendency of the action in time to defend, to come into the case at any time within three years after judgment against him was rendered, make the showing required and file an answer stating a defense, to have the judgment opened and to be heard on his defense, is remedial in its nature, and should be liberally construed in the furtherance of justice.' (p. 126.)" (p. 441.)

Let us examine the question further in the light of the nature of the interest involved and the familiar principle that the duration of an overriding royalty interest is the duration of the lease creating it.

In 135 A. L. R. 546 (*La Laguna Ranch Co. v. Dodge*, 18 Cal. 2d 132, 114 P. 2d 351) the court considered a situation where there was no production under the lease involved and the lease contained an express surrender provision whereby the lessee might at any time quitclaim the premises to the lessor thereby terminating all rights of the parties. The court said:

"No contention was made that the surrender of the lease was a fraudulent act or that others were unjustly enriched at the expense of the overriding royalty holders. *If fraud or inequity were present, the courts would stand ready to provide redress for the injured party.*" (Emphasis supplied.) (p. 553.)

At the beginning of the annotation in 135 A. L. R. 557, we find this statement:

"The general conclusion which may be drawn from the few cases which thus far have dealt with the matter is that an overriding royalty interest, whether or not defined as an interest in real estate, is in its nature subject to the terms and incidents of the lease upon which it is founded, so that, ordinarily, when the lease terminates, either by reason of its own terms or in some other regular manner *consistent with good faith,* the royalty itself comes to an end." (Emphasis supplied.)

### Sullivan, Handbook of Oil and Gas Law, § 132, puts it this way:

"An agreement to pay an overriding royalty is a covenant that runs with the lease and not with the land. Therefore, *absent fraud or bad faith,* a termination of the lease will extinguish the overriding royalty. An express provision in the assignment that the override will continue in the event the lease is extended or renewed will preclude termination of the overriding royalty. In the absence of such provision, the override will continue in force if there is bad faith on the part of the lessee or if the lessee has failed to discharge a duty owing to the owner of the overriding royalty interest." (Emphasis supplied.) (p. 242.)

Most of the decided cases touching holders of an overriding royalty have arisen in controversies between the lessee and the overriding royalty holder, and here there seems clearly emerging a duty of fair dealing required on the part of the lessee (See 2 Williams and Meyers, Oil and Gas Law, § 420.2) to which doctrine this court has definitely inclined (*Howell v. Cooperative Refinery Ass'n.*, 176 Kan. 572, 271 P. 2d 271.)

The case of *Matthews v. Ramsey-Lloyd Oil Co.*, 121 Kan. 75, 245 Pac. 1064, was one involving rights of the owner of a non-operating interest in an oil and gas lease, namely, an oil payment reserved by the lessee on assigning the lease. Thereafter the lease was acquired by one of the concurrent owners of the lessor's estate in the premises. There was no production and hence, no recovery by the lessee-assignor from the assignee of the amount of the oil payment. The court suggested that it was not material that the part owner of the fee had acquired the lease and further stated:

"If oil is developed on this property, the interest in the first production, up to the sum of $30,000.00 which plaintiff reserved to himself when he sold the lease, can readily be protected either at law or in equity so far as Ramsey's dual interest as part lessor-owner and as assignee of the lease is concerned. Equity would not countenance a merger of interests in Ramsey to the prejudice of plaintiff." (pp. 81-82.)

Thus it would seem that the particular circumstances under which a lease is terminated and the presence or absence of bad faith does play a part in determining the duration of the overriding royalty. This would appear right and just as otherwise the holder is completely at the mercy of any collusive overreaching on the part of the owners of the other interests and, though having bargained in good faith for an interest in oil produced during the term of the lease, the law would be powerless to protect him from an unjust cancellation of that lease. The granting and reserving of overriding royalties is well known in the oil industry and the practice can and does serve both the landowners and the operating lessees' interests in the procuring and developing of leases. There is no reason why such holders should not have the ordinary protection of the law from collusion and fraud. In Glassmire, Oil and Gas Leases and Royalties, 2d ed., § 64, the rule is more specifically stated:

"On bona fide forfeiture or surrender of the lease, the overriding royalty created thereunder would fall with the lease. But if such forfeiture or surrender of the lease is obtained by fraud or collusion between the landowner and the assignee of the lease, for the purpose of avoiding or cutting out the overriding royalty interest held by the original lessee and the substitution of a

new lease given direct to the assignee, without mention of the previous over-rider, such a transaction could be enjoined by a court of equity and the original lease sustained. At least the owner of the overriding royalty would have an action at law against both landowner and lease owner for damages sustained by the attempted avoidance of his interest in the lease by a collusive for-feiture or surrender of the same." (p. 240.)

In *Smith v. Drake*, 134 Cal. App. 700, 26 P. 2d 313, the court found there was no fraud in the cancellation of a lease and the giving of a new one, but implicit in the decision is the indication that collusion between the lessor and lessee would be a possible basis for the imposition of a trust for the benefit of the owner of an overriding royalty on a subsequently executed lease, and the case has been so interpreted. (See Sullivan, Handbook of Oil and Gas Law, § 132, p. 242.)

Nomenclature, or the classification of parties as either indis-pensable, necessary, or proper, is not particularly helpful in de-termining whether a "full answer" has been filed in this case, al-though in 5 Williams and Meyers, Oil and Gas Law, § 877.5, this statement is found:

"Since the decree cancelling the lease in the litigation between lessor and lessee terminates the lease also as to the overriding royalty owner, it seems clear that the latter should be regarded as a necessary party, at the least. The cases in point so hold." (See case notes thereunder, p. 551.)

In 58 C. J. S., Mines and Minerals, § 204 b., p. 495, it is stated that the general rules governing parties in other civil actions involving contract ordinarily prevail in actions involving the rights of the par-ties under an oil and gas lease, and further, that persons who have or claim a direct interest in the object and subject matter of the suit and whose interest will necessarily be affected by any judgment that may be rendered therein are not only proper parties but are necessary parties. It is not necessary in the instant case to categorize the appellants in that respect. However, we do note that in *Pfan-nenstiel v. Central Kansas Power Co.*, 186 Kan. 628, 352 P. 2d 51, this court said:

"The term proper party has been defined as a party without whom the cause might proceed but whose presence will allow a decree or judgment more clearly to settle the controversy among all the parties." (p. 635.)

It can hardly be denied that appellants would be entitled to re-lief against appellees and Nako if they can prove that the two were guilty of collusion in depriving them of a substantial right, and we perceive no reason why this could not, and should not, be litigated

in the instant action without injustice to anyone. Once brought in to court, appellants should be permitted to be heard.

In *Wyandotte County Comm'rs v. Axtell,* 134 Kan. 304, 5 P. 2d 1078, this court held that anyone whose rights are affected by a judgment rendered without service other than by publication is entitled to have the judgment opened up when he complies with the statutory provisions therefor, whether or not he was named as a defendant in the action. Here appellants were named as defendants. While every allegation of their proffered answer standing alone might not constitute a defense to appellees' claim against them, such allegations are indelibly tied in and consistent with their claim of collusion as set forth in paragraph 6 of such answer, and taken together the allegations do constitute a sufficient answer to entitle appellants to defend their interest against the termination sought by appellees and are, therefore, a full answer.

In *Albright v. Warkentin,* 31 Kan. 442, 2 Pac. 614, Mr. Justice Brewer said:

"Every party ought to have his day in court; and while service by publication, which in fact imparts no actual notice, must be sustained, yet a party thus served, and who has in fact no knowledge of the proceedings, ought to be granted a hearing if it can be possibly done consistent with the rights of the parties." (p. 445.)

We hold that on bona fide forfeiture or surrender of a lease, the overriding royalty created thereunder falls with the lease. But if such forfeiture or surrender is obtained by fraud or collusion between the landowner and the lessee for the purpose of avoiding or cutting out the overriding royalty interest holder and the substitution of a new lease directly to the lessee, then a court of equity may grant relief to the overriding royalty holder against such forfeiture or surrender.

We should point out that the question before us is not what should be done when the case is finally presented, but whether the appellants have a right to be heard, and we hold that having brought themselves within the provisions of K. S. A. 60-309 (*a*), they have such right and should have their day in court.

In view of all that has been said, we conclude the trial court erred in its order denying appellants' application and that order is reversed and the case remanded with directions to open the judgment rendered against appellants and that they be let in to defend.

Reversed and remanded with directions.

APPROVED BY THE COURT.