NOT DESIGNATED FOR PUBLICATION

No. 128,346

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

WILLIAM C. STORY,
*Appellant*,

v.

SPIRAL ENERGY CORPORATION,
*Appellee*.

MEMORANDUM OPINION

Appeal from Graham District Court; PAULA HOFAKER, judge. Submitted without oral argument. Opinion filed January 30, 2026. Affirmed.

*William C. Story*, appellant pro se.

*Michael J. Baxter*, of Jeter Law Firm LLP, of Hays, for appellee.

Before CLINE, P.J., BRUNS and COBLE, JJ.

CLINE, J.: This case involves an overriding royalty interest (ORRI) in an oil and gas lease which the district court found had expired when the lease to which it attached terminated. William C. Story claims on appeal that both the ORRI and the lease are still valid. After reviewing the record, we find no error in the district court's summary judgment ruling and therefore affirm.

FACTUAL AND PROCEDURAL BACKGROUND

In January 1980, Murlin Cooley leased a southeast quarter section of land in Graham County, Kansas (SE/4) for oil and gas exploration (the 1980 Lease). The 1980 Lease provided that it would remain in effect for six months, after which it would remain in effect "as long thereafter as oil or gas, or either of them, is produced from said land by the lessee, or the premises are being developed or operated."

An oil well, named the Cooley #1, was drilled on the SE/4 in July 1980. This well apparently produced oil until around 1999. At that time, the saltwater disposal well for the Cooley #1 well started to fail and, as a result, the operator claimed the Cooley #1 well had to be partially shut down. Saltwater or "produced water" is a byproduct of oil and gas extraction, created when fresh water is injected into the well to push the oil to the surface. Operators often dispose of this byproduct by injecting it into a special saltwater disposal well, which is either drilled on the producing lease or another lease. See Vanek, *Best Practices for Safe Saltwater Disposal in the Oilfield*, Reign Monitoring Solutions (May 25, 2023), https://www.reignrmc.com/oil-gas/salt-water-disposal. Story, who was managing partner of MEM Partnership (the operator of the 1980 Lease at the time), claims MEM stopped operating the Cooley #1 well because it could not produce oil and gas without a saltwater disposal well.

Story alleges that MEM needed funds to fix the saltwater disposal well on the 1980 Lease, so it assigned an ORRI of .03781250% to Story's wife, Christina A. Story (Christina), in 2002 (Assignment) in exchange for an unspecified amount. An ORRI (like the royalty interest normally held by the mineral owner) is a proportionate interest which entitles the holder to a share of the production or proceeds derived from the sale of oil and gas produced from the land described in the lease, free of the costs of production. See *Campbell v. Nako Corporation*, 195 Kan. 66, 70, 402 P.2d 771 (1965). An ORRI is carved out of the working interest in an oil and gas lease. The working interest is the right

2

to explore, drill, and produce oil and gas from the land described in the lease, usually held by the lease operator, who bears the cost to develop and operate the lease. See *Reynolds-Rexwinkle Oil, Inc. v. Petex, Inc.*, 268 Kan. 840, 846, 1 P.3d 909 (2000).

Following this assignment, the Cooley #1 well did not produce any oil or gas for three years, from 2003 to 2005. In June 2005, a representative of the current landowner filed an affidavit with the register of deeds, attesting that oil production had ceased on the 1980 Lease. Then the Graham County assessor filed an affidavit of nonproduction and nondevelopment, confirming the lapse of the 1980 Lease.

In October 2005, another operator, Blake Exploration, LLC, acquired new oil and gas leases covering the SE/4 (2005 Lease). The next month, it resumed operating the Cooley #1 well, turning it into an active producing well again. At some point later, lease operations were transferred to another operator.

In January 2013, Story sent a letter to the current operator of the Cooley #1 well, Spiral Energy Corporation (Spiral), demanding payment of Christina's share of production from the SE/4 under her ORRI. Story claimed the ORRI applied to both the Cooley #1 well and any new well drilled on the SE/4. Story sent another letter in August 2022, inquiring about lease operations. Then, on July 17, 2023, Story, acting pro se, sued Spiral in the Graham County District Court requesting payment of a share of the production from the Cooley #1 well under Christina's ORRI during Spiral's operation of the well. A few days later, Christina assigned her ORRI to Story.

In January 2024, Spiral moved for summary judgment. The district court held oral arguments in March 2024, after which Story filed three additional pleadings that attempted to create disputes of material fact: (1) "Plaintiff William C. Story Reply to the In-Person Meeting at the Hill City Courthouse on March 25, 2024"; (2) "Plaintiff William C. Story Reply to the Zoom Meeting at the Hill City Courthouse on March 25, 2024";

3

and (3) "Plaintiff William C. Story Controverted Disputed Listing to the Summary Judgement [*sic*] Motion Filed by Defendant."

Then, after a status conference in April 2024, the district court granted Story an additional opportunity to respond to the motion for summary judgment, which was required to be filed on or before April 15, 2024. Story did not submit a filing before this deadline, but in May 2024 filed a "Response to [Spiral]'s Motion for Summary Judgment Created a Problem."

In all, Story submitted seven separate pleadings in response to the motion for summary judgment. The district court ultimately granted Spiral's motion for summary judgment. The court found that Story failed to demonstrate a genuine dispute of material fact sufficient to prevent summary judgment. It also found the ORRI was tied to the 1980 Lease, which was no longer valid, so the ORRI had expired.

Story timely appealed.

REVIEW OF STORY'S APPELLATE CHALLENGES

*Did the district court err in determining that Story's ORRI did not attach to the 2005 Lease?*

Story first seems to argue that the expiration of the 1980 Lease is immaterial because he asserts that ORRIs essentially run with the land, claiming they attach to a lessee operator's interest in any later or subsequent oil and gas leases. Spiral, on the other hand, contends Story misunderstands or overstates Kansas law governing ORRIs. It contends that an ORRI runs with the lease, not the land.

4

*Standard of review*

This appeal arises out of the district court's summary judgment decision in favor of Spiral. Therefore, we apply the long-recognized standards for reviewing such decisions:

> "Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, admissions on file, and supporting affidavits show that no genuine issue exists as to any material fact and the moving part is entitled to judgment as a matter of law. The district court must resolve all facts and reasonable inferences drawn from the evidence in favor of the party against whom the ruling is sought. When opposing summary judgment, a party must produce evidence to establish a dispute as to a material fact. In order to preclude summary judgment, the facts subject to the dispute must be material to the conclusive issue in the case. Appellate courts apply the same rules and, where they find reasonable minds could differ as to the conclusions drawn from the evidence, summary judgment is inappropriate. Appellate review of the legal effect of undisputed facts is de novo." *GFTLenexa, LLC v. City of Lenexa*, 310 Kan. 976, 981-82, 453 P.3d 304 (2019).

To answer this question, we must also interpret the 1980 Lease and the Assignment of the ORRI. We exercise unlimited review over the interpretation and legal effect of written instruments and are not bound by the district court's interpretations or rulings. *Trear v. Chamberlain*, 308 Kan. 932, 936, 425 P.3d 297 (2018).

*Do ORRIs survive beyond the lease they are carved out of?*

> "'An agreement to pay an overriding royalty is a covenant that runs with the lease and not with the land. Therefore, *absent fraud or bad faith*, a termination of the lease will extinguish the overriding royalty. An express provision in the assignment that the override will continue in the event the lease is extended or renewed will preclude termination of the overriding royalty. In the absence of such provision, the override will continue in force if there is bad faith on the part of the lessee or if the lessee has failed to

5

discharge a duty owing to the owner of the overriding royalty interest.'" *Campbell*, 195 Kan. at 72 (quoting Sullivan, Handbook of Oil and Gas Law, § 312, p. 242).

This standard sets out two avenues for Story to demonstrate that his ORRI is still valid and applies to the 2005 Lease: one contractual and one equitable.

Under the first avenue, Story must demonstrate: (1) the Assignment of Christina's ORRI contained an express provision stating the ORRI continued if the 1980 Lease (the lease out of which her ORRI was created) was extended or renewed, and (2) the 2005 Lease operated as an extension or renewal of the 1980 Lease. For example, in *Reynolds-Rexwinkle Oil, Inc.*, the mineral owner lessor and the lessee had a primary lease subject to an ORRI. The assignment reserving the ORRI in that case stated it applied to "'extensions or renewals'" of the lease. 268 Kan. 840, Syl. ¶ 4 The owner of the working interest (who had acquired that interest from the original lessee) then negotiated a substantially identical oil and gas lease from the same lessors during the time the original lease was still in effect (sometimes called a "top lease"). 268 Kan. at 845-46. The Kansas Supreme Court found that, under these circumstances, the top lease was burdened by the ORRI. 268 Kan. at 856-57.

Under the second avenue, Story must demonstrate fraud, bad faith, or collusion between the mineral owner and the lessee operator who executed the 2005 Lease to avoid or eliminate Christina's ORRI by substituting a new lease. In that event, a court can use its equitable power to enforce the ORRI against the new lease. *Campbell*, 195 Kan. 66, Syl. ¶ 3, 75.

*Did Story's ORRI apply to the 2005 Lease?*

Story attempts to travel down the first avenue set out in *Reynolds-Rexwinkle Oil, Inc.* to enforce his ORRI, pointing out the court there "held that express provisions

6

require an Overriding Royalty Interest to attach to extensions or renewal of an oil and gas lease." Based on this holding, Story argues Christina's "ORRI is attached to and burdens any later or subsequent oil and gas leases." But the problem with Story's argument is the holding in *Reynolds-Rexwinkle Oil, Inc.* was referencing express provisions in the assignment creating the ORRI, and the ORRI Assignment to Christina which Story seeks to enforce contains no such provision.

Rather than relying on the document creating the ORRI—as the court did in *Reynolds-Rexwinkle Oil, Inc.*—Story points to language in other documents which he claims recognize the continuing validity of Christina's ORRI beyond the 1980 Lease. The 2005 Lease was assigned to several different operators over the years, and Story notes that these assignments were made "subject to the outstanding overriding royalty interests as appear of record" or "subject to the outstanding overriding royalty interests as appear of record, or assigned prior to closing, if any." But Story provides no evidence that this language was not simply the result of cautious drafting—especially when no specific ORRI is mentioned in these lease assignments.

The ORRI Story seeks to enforce was tied to the 1980 Lease, and the Assignment creating that ORRI contained no language applying that ORRI to future extensions or renewals of the 1980 Lease. Nor does he contend the 2005 Lease was an extension or renewal of the 1980 Lease or that the 2005 Lease was a product of bad faith, fraud, or collusion. And he alleges no facts to support any such findings. Under these circumstances, we see no error in the district court's conclusion that the ORRI did not run with the land and thus did not apply to the 2005 Lease.

*Did the district court err in determining the ORRI was attached to the 1980 Lease instead of the Cooley #1 well?*

Story also argues the ORRI attached to the Cooley #1 well, instead of the 1980 Lease. He contends the ORRI is still valid because the Cooley #1 well was never

"plugged." Plugging a well is a process by which the wellbore is filled with cement and other materials to permanently seal it. This is done once a well has reached the end of its productive life. See *Key Differences Between Capping Wells and Plugging Wells: A Comprehensive Guide*, https://welldonefoundation.org/key-differences-between-capping-wells-and-plugging-wells-a-comprehensive-guide/.

Story's argument is both legally and factually incorrect. First, the law is well settled in Kansas that an ORRI runs with the lease under which it was created and not the land that was leased, absent the exceptions already discussed. *Campbell*, 195 Kan. at 72-73. And Story has cited no legal authority to support his position to the contrary.

Further, the Assignment of the ORRI bears this principle out. The lease operator (Story's company, MEM) assigned an ORRI to Christina "in the Cooley Lease." The Cooley #1 well was not mentioned in this Assignment. And when Christina assigned her ORRI to Story in 2023, that Assignment also referenced a lease of the SE/4—not the Cooley #1 well, which was again mentioned nowhere in the Assignment. Moreover, when Story wrote to Spiral about missed ORRI payments, not only did he accuse Spiral of failing to make ORRI payments on past lease production, but he also stated: "When you drill a new oil well, that too is under the existing ORRI for the entire SE/4." Clearly, Story understood the ORRI covered the lease—not just the Cooley #1 well.

Again, based on this record, Story has failed to show the ORRI attached to the Cooley #1 well instead of the 1980 Lease under which the ORRI was created.

*Did the district court err in determining the 1980 Lease terminated?*

Story next argues that if the ORRI is attached to the 1980 Lease, it is still valid because he contends the 1980 Lease is still valid. He argues that the Cooley #1 well only temporarily ceased production due to mechanical problems. And he notes that the Kansas

8

Corporation Commission (KCC) can approve a well operator's application for "temporary abandonment" of a well due to needed repairs or low oil prices, if no environmental problems exist with the well (sometimes called a TA Application). See K.A.R. 82-3-111 (governing temporary abandonment procedures and requirements). While this is theoretically true, Story cites no TA Applications that he filed with the KCC for the Cooley #1 well. Nor does our review of the record locate any such applications. Further, KCC approval of the temporary abandonment of a well is a regulatory issue—it does not excuse a lease operator from complying with its lease obligations to the mineral owner or extend the life of an oil and gas lease.

While some oil and gas leases contain provisions which allow an operator lessee to extend the life of a nonproducing lease through payment of a shut-in royalty to a lessor, the 1980 Lease contained no such provision. See *Welsch v. Trivestco Energy Co.*, 43 Kan. App. 2d 16, 21-22, 221 P.3d 609 (2009). Nor did Story ask the district court to apply the doctrine of temporary cessation of production, which has been recognized in Kansas to prevent termination of an oil and gas lease due to a "mere temporary cessation of production because of necessary developments or operations." 43 Kan. App. 2d at 25. And even if he had attempted to seek refuge in this doctrine, it is hard to see how it would apply here since it only allows a lessee a "reasonable time to recommence production in paying quantities," and the record shows no oil was produced on the 1980 Lease in the years 2003, 2004, and 2005. 43 Kan. App. 2d at 26.

In fact, Story does not deny that the 1980 Lease did not produce in those years— he simply asserts "[t]here are numerous ways that an oil well is shut-down." But such generic assertions cannot carry his burden to show the 1980 Lease was still valid.

The record also reveals that Story admitted the 1980 Lease was no longer valid. In 2017, the KCC apparently issued a Notice of Violation to Story's company, MEM, for failing to file a TA Application for a Cooley #1 well on the 1980 Lease. Story responded

that "MEM lost the Cooley [#1] Lease operations around the year 2001, because of low oil prices, oil well repairs and lack of production." He pointed out the SE/4 had been released by another operator and that operator was responsible for the wells on the SE/4, including the Cooley #1 well. This admission further supports the district court's finding that the 1980 Lease had expired.

Story next claims the district court erred because he asserts the new leases taken out on the SE/4 are no longer valid due to an alleged lack of production and other reasons. But, even assuming this were true, this assertion has no bearing on whether the 1980 Lease is still valid. Similarly, he disputes the accuracy of (1) an affidavit of cessation of production filed in 2005, which stated the Cooley #1 well did not produce any oil or gas for three years, from 2003 to 2005, while undergoing repairs, and (2) an affidavit of nonproduction and nondevelopment filed by the Graham County assessor confirming the lapse of the 1980 Lease. But given Story's own admissions that oil and gas operations on the 1980 Lease had ceased during this time frame, we need not address his attempts to controvert the accuracy of these documents (nor do we need to address the district court's finding that Story did not actually controvert these facts).

The 1980 Lease provided it would continue beyond its primary term of six months, "as long thereafter as oil or gas, or either of them, is produced from said land by the lessee, or the premises are being developed or operated." Story admits the 1980 Lease was not in operation after 2001, and the record shows that lease did not produce in the years 2003 through 2005. Under these facts, we see no error in the district court's conclusion that the 1980 Lease had terminated.

*Did the district court err in granting summary judgment?*

Story last argues that summary judgment was inappropriate because there were "disputes outstanding along with incomplete 'Discovery' which appears, must be

completed before Summary Judgment can be Ordered." But he does not specify which disputes or outstanding discovery should have prevented the district court from granting summary judgment.

It is well settled that "'[a] party cannot avoid summary judgment on the mere hope that something may develop later during discovery or at trial. Mere speculation is similarly insufficient to avoid summary judgment. [Citation omitted.]'" *Geer v. Eby*, 309 Kan. 182, 190, 432 P.3d 1001 (2019). K.S.A. 60-256(f) allows a party to show by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition to a summary judgment motion. The district court may then deny the summary judgment motion or order a continuance to allow discovery to be undertaken. K.S.A. 60-256(f). But Story did not utilize this procedure before the district court, nor does he reference it on appeal. We therefore find he failed to show the district court erred in granting summary judgment because of alleged incomplete discovery efforts.

As for alleged outstanding factual disputes, the only conclusive issues in this case are whether the ORRI attached to the later leases and whether the 1980 Lease is still valid. Thus, the only facts that are material are those that can help answer these questions. The ORRI Assignment says what it says and Story admits the Cooley #1 well was not producing or operating in the years 2002 through 2005. The other facts which Story attempts to controvert are not material or necessary to the district court's legal conclusions in granting summary judgment. As a result, we find he failed to demonstrate any genuine dispute of material fact that prevented the district court from entering summary judgment.

CONCLUSION

Unless the ORRI holder can demonstrate the exceptions recognized in *Reynolds-Rexwinkle Oil, Inc.* and *Campbell*, when the lease terminates, so does the ORRI. Here, Story did not show the district court erred in finding Christina's ORRI attached to the 1980 Lease and that her ORRI expired when operations under the 1980 Lease ceased. We therefore affirm the district court's decision granting summary judgment for Spiral.

Affirmed.