No. 44,845

MAMIE HALL WEST, *Appellant*, v. THE PRAIRIE STATE BANK, *Appellee.*

(436 P. 2d 402)

Opinion filed January 27, 1968.

*John B. Wooley,* of Wichita, argued the cause, and *Marvin J. Martin, Donald G. McFerson* and *Jimmie E. Grey,* all of Wichita, were with him on the brief for the appellant.

*J. B. McKay,* of El Dorado, argued the cause, and *James B. McKay, Jr.,* also of El Dorado, was with him on the brief for the appellee.

The opinion of the court was delivered by

SCHROEDER, J.: This is an action by Mamie Hall West, plaintiff, to recover $100,000 damages for the alleged breach of a contract between the plaintiff and the Prairie State Bank, defendant. The trial court sustained the defendant's motion for summary judgment and the plaintiff has duly perfected an appeal.

The overall question presented is whether on the facts in this case the trial court erred in sustaining the defendant's motion for summary judgment.

The following undisputed facts appear from the pleadings, answers to interrogatories and admissions on file.

On the 18th day of April, 1961, prior to the marriage of Mamie Hall West (plaintiff-appellant) to L. A. West, they entered into the antenuptial agreement referred to in the case of *In re Estate of West*, 194 Kan. 736, 402 P. 2d 117, a copy of which was made a part of the record in the trial court and admitted by Mamie.

On the 23rd day of April, 1961, Mamie and L. A. West were married. On the 24th day of April, 1961, L. A. West executed a will and Mamie executed the consent thereto mentioned in the aforesaid opinion, a copy of which was made a part of the record in the trial court and admitted by Mamie.

The antenuptial agreement, among other things, provides in paragraph (c):

". . . that upon the death of either, the survivor shall not have and will not assert any claim of right, title or interest under the laws of any State because of such survivorship in or to the property left by the other except as provided in paragraph 'a' above."

The will in paragraph VII made provision for Mamie in full compliance with paragraph (a) of the antenuptial agreement. On the 19th day of June, 1962, Mamie and L. A. West executed the following authorization at the Prairie State Bank on the bottom of a "signature card:"

"Individual Account

"I hereby authorize the signature appearing below to transact any and all business *in my behalf* with The Prairie State Bank, pursuant to the regulations on this card.

|  | /s/ | Mrs. L. A. West |
|---|---|---|
|  |  | Authorized Signature |
| 6/19/62 | /s/ | L. A. West |
| (Emphasis added.) |  | Depositor" |

In answer to an interrogatory Mamie said: "When it became apparent to Plaintiff that L. A. West probably was not going to recover and that he had not honored his agreement to take care of her, she requested Defendant to honor a check to herself in the amount of $150,000.00 and upon Defendant's advice, reduced said check to $100,000.00, and wrote and presented the same as

advised by Defendant. This check was cashed by Defendant, which agreed to hold the funds in escrow for Plaintiff under the terms of an Escrow Agreement as set forth in Exhibit 'A' attached to Plaintiff's Petition." This event occurred on the 4th day of August, 1962.

In answer to an interrogatory Mamie also said she does not "claim to have had any authority to draw the $100,000 check on the account of L. A. West other than the signature card," hereinabove quoted.

The "escrow agreement" attached to the plaintiff's petition as Exhibit "A" reads:

"Augusta, Kansas
August, 4, 1962

"The Prairie State Bank
Augusta, Kansas
Gentlemen:

"In as much as you have *refused to pay* a check to me in the amount of $100,000.00 drawn on the account of L. A. West with your bank, on which I am authorized to sign and to which I believe that I am rightfully entitled, as his wife, *but to which there might be some controversy,* I am hereby requesting that you hold these funds for me in escrow until after the death of L. A. West and for one year after the closing and full settlement of his estate, after which time *it is* to be paid to me *unless* before such time *you are directed* by the court, *or the executor of his estate to return it to the account of L. A. West or to his estate.*

Yours very truly,
MAMIE WEST
(Mrs. L. A. [MAMIE] WEST)"
(Emphasis added.)

In answer to an interrogatory Mamie said the only consideration for the $100,000 check was L. A. West's promise that he "would take care of her" if Mamie would marry him, and the "care, comfort and assistance" she gave him, both before and after the marriage.

On the 12th day of July, 1965, the executors made written demand upon the Prairie State Bank for payment to it of the $100,000, and mailed a copy of the demand to Bond and Bond, El Dorado, Kansas, who were then Mamie's attorneys. Her attorneys advised Mamie of such demand on the 30th day of July, 1965.

The Prairie State Bank delivered the $100,000, which had been held in the form of a cashier's check, to the executors in the estate of L. A. West on the 22nd day of July, 1965.

When Mamie's attorneys were advised of the demand made by the executors in the estate of L. A. West upon the Prairie State Bank,

Mamie was then out of town on a trip and did not learn what had occurred until she returned home on the 30th day of July, 1965. She then found a letter from the Prairie State Bank dated July 22, 1965, stating in part:

"We are, today, delivering these funds to these executors and felt you should have notice that it was necessary that we comply with their demands."

It is conceded the Prairie State Bank and the executors in the estate of L. A. West had entered into an agreement whereby the bank paid the $100,000 without interest to the executors of the estate, and the executors agreed to pay the $100,000 plus interest at six percent back to the bank if it were called upon to make payment to Mamie. This agreement was subsequently approved by the probate court without public notice or notice to Mamie.

Reference was made to the $100,000 here in controversy in the case of *In re Estate of West,* supra.

The appellant contends this case is based solely upon the appellee's breach of its fiduciary duty and agreement to carry out its promises contained in the "escrow agreement" dated August 4, 1962. On this premise the appellant complains the trial court erred in requiring her, over objection, to answer certain interrogatories, which sought to ascertain whether or not Mamie had authority to write the check, whether or not Mamie was entitled to the $100,000, and whether or not there was consideration for the $100,000.

The appellant argues the answers called for by these interrogatories were not relevant or material, and her objections thereto should have been sustained.

We think the primary premise of the appellant that the "escrow agreement" was a separate and distinct transaction is untenable.

A refusal to recognize the acts of the parties prior to the time the "escrow agreement" was signed, on the ground that they are not material or relevant to the issues raised by the pleadings, simply ignores the issues which were raised by the answer.

The "escrow agreement" cannot be isolated. What occurred at the bank on the 4th day of August, 1962—the presentation of the check, the bank's refusal to cash it, the execution of the "escrow agreement," and the issuance of the cashier's check—was a single transaction. It would be improper for the court to look only to the "escrow agreement" in determining the appellant's right to the money. This was not a case where the appellant bought a cashier's check with her own money and entered into an "escrow agreement"

pertaining to her own property. The check was never "cashed." The "escrow agreement" on which the appellant relies recites that the bank has "refused to pay a check to me . . . drawn on the account of L. A. West." The check was a mere device to transfer $100,000 from the account of L. A. West into a cashier's check. The appellant at no time had possession or control of any of this money.

It is well settled in this jurisdiction that where two or more instruments are executed by the same parties contemporaneously, or even at different times in the course of the same transaction, and concern the same subject matter, they will be read and construed together so far as determining the respective rights and interests of the parties, although they do not in terms refer to each other. (*In re Estate of Cooper*, 195 Kan. 174, 178, 403 P. 2d 984, and authorities cited therein.)

It cannot be said on the basis of the record here presented the trial court erred in overruling the appellant's objections to the various interrogatories propounded by the appellee.

The appellant contends the trial court erred in sustaining the appellee's motion for summary judgment when the record shows there are uncontroverted facts which preclude judgment in favor of the appellee, and there are genuine issues as to material facts about which the minds of reasonable men might differ and upon which the outcome of this case depends.

The pertinent portion of K. S. A. 60-256 (*c*) provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."

Various cases in which this court has had occasion to consider and rule upon the validity of a summary judgment entered by the district court are *Herl v. State Bank of Parsons*, 195 Kan. 35, 403 P. 2d 110; *Brick v. City of Wichita*, 195 Kan. 206, 403 P. 2d 964; *Meyer, Executor v. Benelli*, 197 Kan. 98, 415 P. 2d 415; and *Wilson v. Deer*, 197 Kan. 171, 415 P. 2d 289.

Our state statute on a motion for summary judgment is the same as Federal Rule No. 56. The purposes of the rule are well stated in *Schreffler v. Bowles*, 153 F. 2d 1 (10th Cir. 1946), in which it was said:

"The salutary purpose of Rule 56 is to permit speedy and expeditious disposal of cases where the pleadings do not as a matter of fact present any substantial question for determination. Flimsy or transparent charges or allegations are insufficient to sustain a justiciable controversy requiring the submission thereof. The purpose of the rule is to permit the trier to pierce formal allegations of facts in pleadings and grant relief by summary judgment when it appears from uncontroverted facts set forth in affidavits, depositions or admissions on file that there are as a matter of fact no genuine issues for trial." (p. 3.)

On the record here presented there is simply no genuine issue as to a material fact, as we shall hereafter discuss.

While it may be conceded the record does not show L. A. West was mentally incompetent on the 4th day of August, 1962, the date on which the transaction at the bank took place, the outcome of this action does not hinge upon this fact. The foregoing was pleaded as a defense by the bank but denied by Mamie in answer to an interrogatory. It is not necessary that all defenses pleaded be admitted or established in order to entitle a defendant to a summary judgment. It is sufficient if the record shows that the plaintiff in an action cannot recover as a matter of law.

The appellant does not claim to have had any authority to draw the $100,000 check on the account of L. A. West other than the signature card. But the signature card expressly authorized her "to transact any and all business *in my behalf.*" (Emphasis added.) This has reference to the business of L. A. West. Therefore, in writing the check the appellant acted as the agent of L. A. West.

It is well settled that an agent cannot deal with the subject matter of the agency for his own profit or advantage. In *Merchant v. Foreman,* 182 Kan. 550, 322 P. 2d 740, this court said:

". . . (2) the relationship existing between a principal and agent is a fiduciary one demanding conditions of trust and confidence which require of the agent the same obligation of individual service and loyalty as is imposed upon a trustee in favor of his beneficiary [citations], and that in all transactions concerning and affecting the subject matter of his agency, it is the duty of the agent to act with the utmost good faith and loyalty for the furtherance and advancement of the interests of his principal [citations]; (3) where a fiduciary relation is established between the parties the law views with suspicion and scrutinizes very closely all dealings between them in the subject matter of the agency to see that the agent has dealt with the utmost good faith and fairness, and that he has given the principal the benefit of all his knowledge and skill, and, if it appears that the agent has been guilty of any concealment or unfairness, or if he has taken any advantage of his confidential relation, the transaction will not be allowed to stand [citations], and (4) one who acts as an agent and also deals with his principal with respect to the subject matter cannot take advantage of his principal by withholding from him any information within his

knowledge, including the value of the property, which might have a bearing upon the desirability of the principal to make the trade. . . ." (p. 556.)

The rule is particularly applicable here because the authorization on the signature card expressly limited the appellant's authority to the transaction of business on behalf of L. A. West.

This rule was plainly violated by the appellant. In the language of her answer to an interrogatory, "When it became apparent to Plaintiff that L. A. West probably was not going to recover and that he had not honored his agreement to take care of her, she requested Defendant to honor a check to herself in the amount of $150,000.00 and, upon Defendant's advice, reduced said check to $100,000.00, and wrote and presented the same as advised by Defendant."

Of course, both the antenuptial contract and the will of L. A. West, with the appellant's written consent thereto, were executed after the agreement to which the appellant refers was made. (See, *In re Estate of West,* supra.) In this manner, the appellant sought to obtain $100,000 more than she knew she would receive under the antenuptial agreement and the will. In so acting, she violated not only the antenuptial agreement and the will, but her fiduciary duty as well.

The point most emphatically urged by the appellant is that the delivery of the $100,000 by the bank to the executors of the estate of L. A. West was wrongful and contrary to the terms of the "escrow agreement."

The appellant argues she never had physical possession of the money, but the bank recognized that there was merit and substance to her claim that she was rightfully entitled to it so the parties entered into the "escrow agreement." She argues, if the bank did not agree by the "escrow agreement," to take and hold the money for her under the conditions and upon the terms expressed in such writing, then she either has no cause of action or she has based her claim of right to the money upon an improper theory.

The appellant also contends the "escrow agreement" is patently ambiguous. She says it was her understanding that the "escrow agreement" meant that if before the expiration of "one year after the closing and full settlement of his estate," the court or the executors directed the bank to return the money to the account of L. A. West or to his estate, she would be notified by the bank and have an opportunity to further assert her right thereto. This interpretation, the appellant contends, is a reasonable one.

The appellant argues the "escrow agreement" is interpreted by the bank as if there was added to it the following words: "In either of which events you are to forthwith pay said $100,000.00 as the court or executors direct.".

In our opinion the "escrow agreement" is clear and unambiguous. The bank here by delivering the $100,000 to the executors acted in strict compliance with the so-called "escrow agreement" which was in the form of a letter signed by the appellant. That letter, after stating that the bank had refused to cash the check to which the appellant believed she was entitled, "but to which there might be some controversy," stated: "I am hereby requesting that you hold these funds for me in escrow until after the death of L. A. West and for one year after the closing and full settlement of his estate, after which time *it is* to be paid to me *unless before such time you are directed by* the court, or *the executor of his estate to return it to the account of L. A. West or to his estate.*" (Emphasis added.)

It developed, as was so euphemistically forecast in the letter, that there was "some controversy" as to the appellant's right to the $100,000. The executors made demand for the return of the money to them, and the bank returned it. No breach of duty by the bank to the appellant appears. The petition alleges that the bank "without prior notice to plaintiff, wrongfully delivered said funds to a third party, as shown by Exhibit 'B' attached," but this is a mere conclusion which must yield to the admitted facts, and such facts do not disclose as a matter of law that the delivery was wrongful. Further, while the letter required no notice to the appellant, she was given notice by sending a copy of the demand to her attorneys at the same time it was sent to the bank.

The letter referred to as an "escrow agreement" says not one word about a judicial determination. To the contrary, it provides for the return of the money to the account of L. A. West if directed by the court or the executors of his estate.

The construction of a written instrument is a question of law which can be determined on a motion for summary judgment. (*Meyer, Executor v. Benelli,* supra.)

If the appellant were to recover from the bank in this case, it clearly appears that the judgment would actually be paid by the estate of L. A. West. In this manner appellant would accomplish indirectly what she could not do directly—recover $100,000 from

the estate in addition to the provisions made for her in the antenuptial agreement and the will.

If the appellant had a claim for services she performed for L. A. West before the marriage against L. A. West, which survived both the antenuptial agreement and the will, the only forum in which she could present such claim was the probate court. (K. S. A. 59-2237.)

Even on the appellant's narrow theory of this case—that her cause of action is based solely upon the bank's breach of its fiduciary duty and agreement to carry out its promises contained in the "escrow agreement"—the appellant cannot recover. Her answers to the interrogatories and the admissions made show conclusively that the bank acted strictly in accordance with the literal terms of the "escrow agreement" in delivering the $100,000 to the executors.

The judgment of the lower court is affirmed.