No. 45,151

Phillip Bowen, Administrator of the Estate of Hugh W. Craig, Deceased, *Appellant*, v. Elma I. Hathaway, *Appellee and Cross-Appellant.*

(446 P. 2d 723)

Opinion filed November 9, 1968.

*Robert F. Duncan,* of Atchison, argued the cause and *Richard W. Shaw,* of Hiawatha, and *Richard P. Senecal* and *Richard A. Dempster,* both of Atchison, were with him on the brief for appellant and cross-appellee.

*Robert M. Finley,* of Hiawatha, argued the cause and *Harry E. Miller,* of Hiawatha, was with him on the brief for appellee and cross-appellant.

The opinion of the court was delivered by

FROMME, J.: This action was instituted by the administrator, Phillip Bowen, to bring assets into the estate of the decedent, Hugh W. Craig. The suit involves the title to 120 acres of Brown county land and to a $2,020.68 account in the Citizens State Bank of Hiawatha, Kansas.

The defendant, Elma I. Hathaway, was adjudged owner of the land. The plaintiff-administrator was adjudged owner of the checking account. The trial court made written findings of fact upon which the judgment was based. The plaintiff has appealed and the defendant has cross-appealed.

We will consider the appeal of the plaintiff-administrator first. In the petition it was alleged the deed from Hugh W. Craig to the defendant was executed without consideration and as a result of undue influence exerted by the defendant upon the decedent.

The trial court after hearing the evidence made the following findings which relate to the deed:

"The Court finds that Hugh W. Craig, a single person, conveyed the real estate in question to the defendant on February 10, 1965, and grantor reserved the use, rents and income together with one half of all oil, gas or other minerals during his life time; That said deed was filed for record in the Office of The Register of Deeds of Brown County, Kansas on February 11, 1965 and recorded in book 257, page 38; That Hugh W. Craig died March 4, 1966, and his estate is now in the process of administration and that Phillip Bowen is the duly acting, qualified administrator of said estate.

"That prior to and at the time this deed was executed, Mr. Craig had independent advice by Robert M. Finley, an attorney of his own choosing; that the defendant did not solicit or induce Mr. Craig to execute this sale; That whatever relationship there was between Mr. Craig and the defendant, there was no fraud involved in the sale of this real estate, or any undue influence exerted by the defendant on Mr. Craig.

"That Mr. Craig at all times prior to and after this transaction was completed, knew the extent of his property and the natural objects of his bounty.

"That at no time after this deed was executed, did Mr. Craig ever disaffirm this deed, or bring any action to have it set aside, and that the plaintiff has failed to sustain the burden of proof to set aside this deed."

The points designated as error by the administrator relate generally to sufficiency of the evidence to support the findings and the judgment. The evidence tending to support the findings will be summarized.

Hugh W. Craig was a farmer. He owned and lived on this land for many years. His closest relative was a cousin who lived in

Omaha, Nebraska. He was 82 years old when he left the farm and moved to Hiawatha. On moving to town he gave a power of attorney to his friend, Mr. Shannon, to lease, mortgage and sell his land. He also executed a will in which he gave the property to Mr. Shannon on his death.

Mr. Craig owed outstanding debts totalling under $15,000. It became necessary for him to mortgage the land to pay these debts. Through the efforts of three friends, including Mr. Shannon, he obtained a loan of $15,000 from the Citizens State Bank. This loan was secured by a mortgage on the land.

After moving to town Mr. Craig lived for several months in a hotel in Hiawatha. Because of his age and physical health he needed personal attention. The defendant, Elma I. Hathaway, was working in the hotel. She looked after his meals, washed his clothes and took him to the farm and the bank. Later he moved from the hotel to a nursing home and continued to call on the defendant to take him to the farm and the bank.

About six months after the mortgage was executed Mr. Craig became concerned about his financial condition. He was upset and worried about the mortgage. He had lost confidence in Mr. Shannon as his agent. In October 1964 the defendant took Mr. Craig to the office of Robert M. Finley, an attorney. The power of attorney held by Mr. Shannon was revoked. The will making Mr. Shannon residuary legatee and devisee was revoked.

About a week later the defendant again took Mr. Craig to see attorney Finley and a new power of attorney was executed appointing the defendant as his agent. She was granted authority to deposit his money, write checks on the bank account, lease the farm and collect the rents. She was not given authority to mortgage or sell the land.

Shortly thereafter Mr. Craig became concerned about his living expenses and the interest accruing on the mortgage. He called the defendant to the nursing home and suggested that she pay off the mortgage from her own savings account. As an inducement he agreed to deed the land to her. Later the defendant took Mr. Craig to see attorney Finley and the matter was discussed. The mortgage and accumulated interest amounted to $15,703.55. The value of the land was around $40,000. This matter was discussed by the parties in attorney Finley's office on five separate occasions over a period of two months. It was finally agreed the defendant

would furnish the money to pay the mortgage and Mr. Craig would deed the land to defendant and would retain the rents and profits and a half interest in the minerals during his lifetime.

The money was paid, the mortgage was released and the deed was recorded. A year later Mr. Craig died.

In addition to insufficiency of the evidence the administrator specifies error because the trial court refused to make additional findings requested by him.

An appellate court's function is confined to a determination of whether there is substantial competent evidence to support the trial court's findings and whether those findings support the judgment rendered. When the findings and the judgment are supported they are binding and conclusive on appeal. (See *Sullivan v. Sullivan,* 196 Kan. 705, 413 P. 2d 988 and cases cited at page 709 of the opinion.) In such event this court is not concerned with evidence which, if believed, would support additional or contrary findings. (See *In re Estate of Pyke,* 199 Kan. 1, 427 P. 2d 67 and cases cited at page 7 of the opinion.)

The trial court found the defendant did not solicit or induce Mr. Craig to execute the deed, she did not exert undue influence on him and he had independent advice from an attorney of his own choosing prior to and at the time the deed was signed.

There is substantial competent evidence to support the findings. The findings support the judgment entered. These findings are binding and conclusive on appeal.

The plaintiff-administrator questions the conclusion of the trial court that plaintiff failed to sustain the burden of proof to set the deed aside. If a confidential relationship existed between these parties he contends this cast the burden of proof upon the defendant and the court erroneously placed that burden upon him.

The burden of proving a disputed fact or issue rests upon the party asserting it as a basis of his claim and remains with him throughout the trial. (See *Wycoff v. Board of County Commissioners,* 191 Kan. 658, 383 P. 2d 520 and cases cited at page 665 of the opinion.) This is true even though it may be incumbent upon the other party to proceed with the introduction of evidence at some stage of the proceedings. The burden of going forward with the evidence does not change the burden of proving a disputed issue. (*Miller v. Kruggel,* 165 Kan. 435, 195 P. 2d 597.)

The invalidity of the deed was alleged by the administrator as a

basis of his claim. He had the burden of proving this issue and it remained with him throughout the trial.

Courts view with suspicion deeds given to a party occupying a confidential relationship with the grantor. Such deeds will be rescinded or cancelled unless the grantee shows by convincing evidence there was no undue influence exerted upon the grantor. The grantee must show utmost good faith on his part. The grantee in the present case sustained that burden of going forward with the evidence.

The quality of the independent advice given is questioned by the administrator. Our decisions do not require a showing of independent advice in every case where a confidential relationship existed. The trial court in the present case found the grantor had sufficient independent advice. However, the grantee may sustain his burden of going forward with the evidence by presenting other substantial competent evidence. (See *In re Estate of Carlson*, 201 Kan. 635, 443 P. 2d 339 and cases cited on page 648 of the opinion.)

All matters relating to good faith, solicitation, competency, independent advice and valuable consideration were carefully considered by the trial court in determining the issue of undue influence.

The plaintiff-administrator contends the consideration paid for the deed was inadequate. Even though the consideration paid by defendant for the remainder interest in the land may not have been equal to the full market value of the land it was an adequate consideration. It was legally sufficient to render the deed operative to pass title to the property. In such case the amount paid bears only upon the question of undue influence. (*Hays v. Patterson*, 97 Kan. 478, 155 Pac. 932; 23 Am. Jur. 2d, Deeds § 66; 26 C. J. S., Deeds § 20.)

The judgment upholding the validity of the deed was adequately supported by the evidence.

We turn next to the cross-appeal. The trial court determined the money in the bank account was owned by Mr. Craig at the time of his death and passed to the plaintiff-administrator. From this determination the defendant has cross-appealed. In support of this determination the court made these findings:

"That on March 19, 1965, Hugh W. Craig established a joint tenancy bank account with the defendant in the Citizens State Bank in Hiawatha, Kansas. That on July 26, 1965, Hugh W. Craig notified the Citizens State Bank of Hiawatha in writing that the power of attorney that he had given to the

defendant was canceled and that he also canceled any authority the defendant had to write checks on the account; and that James W. Patton, an officer of the bank, so notified the personnel of the bank not to honor any checks drawn by the defendant.

"The Court finds that the defendant recognized the cancellation of this authority and did not write any checks on this account after that date; that this was the intention of Hugh W. Craig to change this account from the joint tenancy account with the defendant to a personal account."

The evidence at the trial established that prior to April 1964 Hugh W. Craig was the owner of money on deposit in a checking account at the Citizens State Bank. When the power of attorney was given to Mr. Shannon the name listed on the bank's ledger sheet was changed to read: "Hugh W. Craig, James M. Shannon, Power of Attorney, 510 Oregon, Hiawatha, Kansas." After the Shannon power of attorney was revoked and the defendant was appointed in his stead the name on the ledger sheet was changed to read "Hugh W. Craig, Elma Hathaway, Power of Attorney, Hiawatha, Kansas." The Hathaway power of attorney was executed on November 5, 1964.

An officer of the bank testified it was at this time that Mr. Craig called him to the nursing home and requested he bring a signature card. The officer then talked with Mr. Craig about creating a joint account with Elma Hathaway. A signature card was signed and given to the bank's officer. It was explained to Mr. Craig that both could write checks and if he died first all the money in the account would belong to Elma Hathaway. The bank had previously been furnished a copy of the Hathaway power of attorney. This power of attorney authorized Elma I. Hathaway *to deposit money to his bank account, write checks on his bank account, pay any and all bills that he might incur,* including taxes and other indebtedness, execute all agreements relative to A. S. C. farm program and to manage and control all real estate that he owned.

A copy of the signature card does not appear in the record on appeal. It is conceded by all parties, however, that the card was introduced in evidence. It is further agreed that by written provisions of the card both parties were authorized to withdraw any funds on deposit and on the death of one the survivor was entitled to the balance in the account. The officer of the bank testified he considered it a "joint tenancy account." This account contained the only funds Mr. Craig had in the bank.

On July 26, 1965, Mr. Craig signed a written revocation of the Hathaway power of attorney. The revocation read as follows:

"KNOW ALL MEN BY THESE PRESENTS, that I, the undersigned, do hereby revoke, cancel and hold for naught, the power of attorney I previously gave to Alma Hathaway (sic), dated on or about the 19th day of March, 1965, and specifically cancel any authority of the said Alma Hathaway (sic) to write checks on my account in the Citizens State Bank of Hiawatha, Kansas."

An officer of the bank testified he talked with Mr. Craig about this revocation and that Mr. Craig said he didn't want Elma to write any more checks on his account. The officer then asked Mr. Craig if he wanted her name taken off the account so there would be no "joint tenancy." Mr. Craig replied, "No, I just don't want her to write any more checks on my account." The officer further testified he instructed the bookkeepers not to honor any checks that Elma Hathaway wrote on the account and he notified Mrs. Hathaway to this effect.

It is apparent from the record that neither the depositor nor the banker understood the incidents of ownership and legal implications arising from this two party bank account.

The courts of some states determine title and ownership of such funds on the basis of some specific statutory enactment by their legislatures. Our statute relating to two party bank accounts (K. S. A. 9-1205) was designed for the protection of the bank in making payments from such an account. The statute has nothing to do with the ownership of the fund as between the two parties. (*Miller v. Higgins*, 188 Kan. 736, 739, 366 P. 2d 257.)

In the absence of statutory enactment various legal theories are used by the courts to give effect to the intention of the depositor. Some states base title and ownership on the law of gifts, some on the law of trusts and still others on the law of contracts. (See 26 Chicago L. Rev. 376; 48 A. L. R. 189, anno.; 161 A. L. R. 71, anno.)

This court has chosen the law of contracts to determine ownership of funds placed in a two party bank account.

In the case of *In re Estate of Smith,* 199 Kan. 89, 427 P. 2d 443, we said:

"Whether or not a joint tenancy bank savings account is created in the name of a depositor and another must be determined on contract principles." (Syl. 1.)

In *Smith* it was determined the name or names placed on the

bank ledger sheet do not determine the ownership of the funds in the account.

In *Simonich, Executrix, v. Wilt,* 197 Kan. 417, 417 P. 2d 139, we held when the incidents of the ownership of the funds in a bank account are evidenced by a written agreement in the form of a signature card the written agreement controls. In such a case, under the parol evidence rule, extrinsic parol evidence is inadmissible to vary the unambiguous terms of the written deposit agreement.

The title and interest of the parties to a two party bank account depends upon the realities of ownership of the funds on deposit. The form of the account does not automatically determine the incidents of ownership. When the parties by written contract agree on the title and ownership of the funds in the account the contract controls.

In the present case the agreement as to ownership of the funds is evidenced by two written instruments. The power of attorney and the signature card were executed contemporaneously and both referred directly to the funds in said account.

When two instruments are executed by the same party or parties contemporaneously or in the course of the same transaction and concern the same subject matter they will be read and construed together to determine the respective rights of the parties. This is true even though the two instruments do not in terms refer to each other. (See *Shepard, Executrix, v. John Hancock Mutual Life Ins. Co.,* 189 Kan. 125, 368 P. 2d 19, and cases cited at page 134 of the opinion.)

In the present case both instruments referred to the two party bank account. Both instruments limited and defined the rights of the parties in these funds. When these two instruments are construed together it appears that the intention of Mr. Craig was to retain beneficial ownership of the funds in the account during his lifetime. The bank account was to be used by the agent under the terms of the written power of attorney. The interest which Elma Hathaway acquired in these funds was subject to a reserved power of revocation implicit in the power of attorney. When the reserved power of revocation was exercised all present rights of the defendant were terminated. (See 161 A. L. R. 71, anno. and cases collected therein.)

The practical construction placed upon a contract by a party during performance may be of particular importance in its inter-

pretation. (*Lambertz v. Builders, Inc.,* 183 Kan. 602, 607, 331 P. 2d 559.)

In this case the revocation of the power of attorney was delivered to the bank by the depositor, Mr. Craig. The revocation was acted upon by the bank. The party affected was notified and it is apparent from her testimony that she acceded to the revocation of her interest in the funds. She testified, "We had a very friendly agreement that he (Mr. Craig) would take care of his own business, but I wouldn't write any checks on the account."

The desire expressed by Mr. Craig that Elma Hathaway have the funds on his death was not legally sufficient to effect transfer of title at his death. It was not sufficient as a gift (*Hudson, Administrator v. Tucker,* 188 Kan. 202, 361 P. 2d 878) and it was not sufficient as a testamentary disposition. (K. S. A. 59-606.)

The rights of Elma I. Hathaway in the funds were legally terminated by the depositor prior to his death. On his death title to the account passed to his administrator.

The judgment is affirmed both on the appeal and cross-appeal.