No. 47,419

WILFORD L. CLINE AND R. LEONA CLINE, *Appellees,* v. GEORGE A. ANGLE, *Appellant.*

(532 P. 2d 1093)

Opinion filed March 1, 1975.

*Gerald Sawatzky,* of Foulston, Siefkin, Powers & Eberhardt, of Wichita, argued the cause, and *John J. Stang,* of LaCrosse, was with him on the brief for the appellant.

*Robert J. O'Connor,* of Hershberger, Patterson & Jones, of Wichita, argued the cause, and *Richard Jones,* of the same firm, was with him on the brief for the appellees.

The opinion of the court was delivered by

FROMME, J.: This action was brought to recover royalties allegedly due from the production, extraction and sale of helium gas. The plaintiffs, Wilford L. Cline and R. Leona Cline, assigned certain oil and gas leases in Rush County, Kansas, to the defendant, George A. Angle, and reserved a royalty in any helium gas produced from the leases. The trial court after construing certain written instruments and considering stipulated facts entered a partial summary judgment in favor of plaintiffs. Defendant was ordered to account for royalty due. He applied for and received permission to perfect the instant interlocutory appeal.

We will summarize the essential facts. The original oil and gas leases were acquired by Morrison Producing Company (Morrison). Morrison acquired a large block of leases in Rush County, Kansas. A few small gas wells were drilled on some of the leases. The wells were located in an area which became known as the Reichel gas field. Morrison sold all present and future gas production from its block of leases to Kansas-Nebraska Natural Gas Company (Kansas-Nebraska). By 1960, gas development in the area appeared to be uneconomical. Morrison dropped much of the undeveloped acreage and granted Wilford L. Cline the right to farm out the balance of the undeveloped acreage.

On February 22, 1961, Cline assigned the leases on this undeveloped acreage to the defendant, George A. Angle, in return for overriding royalties and a commitment to develop the acreage. The helium content of the gas being produced in this area was around two percent (2%) of the total volume of gas produced. The as-

signors of the leases, Wilford L. and R. Leona Cline, reserved two different royalty interests under all the leases assigned.

The first overriding royalty interest reserved was 1/16th of 7/8ths of all of the oil, gas and casinghead gas produced, saved and marketed from said leases. This was a standard overriding royalty consisting of a share of production free of expense delivered at the wellhead.

The second royalty interest was not a standard overriding royalty reservation. It called for a royalty of 1/8th of 8/8ths of the helium gas separately marketed. This reservation was set out in paragraph 9 of the lease assignment agreement and it reads as follows:

"9. The parties are aware that the natural gas encountered in reservoirs similar to those expected to underly the leases in question contain small percentages of helium gas and, at present, because of the small percentage of helium and the extraordinary costs of extracting it, the gas is sold by producers in the area at the wellhead to a pipe line company without a separate purchaser or payment for the helium. If, during the life of the leases covered by this contract, the producers in the field should, in the future, be able to sell, advantageously, the helium gas by a separate sale, separately accounted for, and for a separate price stated and paid, then and in that event only the overriding royalty interest of Cline, insofar and only insofar as it applies to the helium separately marketed and paid for, shall be increased to 1/8th of all (8/8) of the helium produced, saved and so separately marketed and paid for; otherwise there shall be no obligation on Angle's part to separately account to Cline any gas constituent, including helium, regardless of the extent to which it may influence the price of gas at the wellhead."

It is undisputed that neither Kansas-Nebraska nor any other purchaser in this gas field has ever paid a separate price for the helium content of the gas produced.

George A. Angle, doing business as Frontier Oil Company, commenced developing the leases by drilling wells. Ultimately, 12 gas producing wells were obtained. In February, 1962, the plaintiffs signed division orders which stated the gas was being sold to Kansas-Nebraska under the terms of a gas purchase contract dated October 5, 1961. The division order specified that the Clines were to receive their overriding royalty of 1/16th of 7/8ths in accordance with the lease assignment contract dated February 22, 1961.

This division order required a separate helium division order be obtained in event Kansas-Nebraska, the pipeline purchaser, in the future might agree to account for a separate purchase of the helium content at a separate price.

The above division order was intended to facilitate payment of royalty on the helium content of the natural gas at such time in the

future as a separate sale and separate accounting could be negotiated for the helium content of the gas at the wellhead.

In February, 1961, when the Clines assigned their leases to Angle and reserved the helium royalty, Angle had drilled no gas wells in Rush County and at that time had no proven reserves of helium bearing gas. Sometime later Angle commenced to acquire other leasehold acreages in Rush County not dedicated to any particular gas purchaser. Plaintiffs were not involved in this acreage. Angle drilled numerous gas wells thereon. By 1963, Angle had developed gas reserves containing considerable helium. He then began plans to construct a processing plant near Otis, Kansas, to extract the helium from the natural gas.

In the spring of 1966, Angle borrowed $7,000,000.00 and constructed a helium plant. At first he commenced to extract helium from the gas produced in his own gas wells. His helium extraction business was operated under the trade name of Kansas Refined Helium Company, a sole proprietorship. Kansas-Nebraska continued purchasing the gas from the wells here involved and at least part of it was resold to the Bureau of Mines to be processed in the United State's helium plant at Otis, Kansas.

In 1968, the Bureau of Mines closed its helium plant at Otis. Kansas Refined Helium Company entered into a gas processing contract with Kansas-Nebraska which provided for the purchase of gas from Kansas-Nebraska for helium extraction purposes. There was no provision in the gas processing contract for a separate payment for the helium content of the natural gas. The gas was purchased by Kansas Refined Helium Company at the normal industrial rate for industrial gas as provided in the Kansas-Nebraska filings with the Kansas Corporation Commission. Of the gas gathered and piped to the plant only a small portion originated from leases in which plaintiffs held royalties. Likewise, only a small portion of the helium extracted and sold was traceable to leases in which the Clines held a royalty.

In 1969, the Clines filed this suit claiming that since George A. Angle, under the trade name of Kansas Refined Helium Company, extracted and sold the helium that this constituted a separate sale of helium as contemplated in paragraph 9 of the contract which entitled the Clines to the increased royalty on the helium.

The trial court accepted the plaintiffs' arguments and ordered the defendant to account for one-eighth (1/8th) of the helium ex-

tracted and sold from the leases in question. The trial court further held:

"With regard to said accounting and calculation of the principal amount, the overriding royalty specified in Paragraph No. 9 of the Agreement is not based on Defendant's gross receipts from the sale of helium, but rather on his net receipts after deduction of his cost of operation. Further, Defendant is to be allowed a credit against the overriding royalty calculated pursuant to Paragraph No. 9 of the Agreement in the amount of that portion of the overriding royalty attributable to helium and paid pursuant to the overriding royalty provisions of Paragraph No. 1 of the Agreement."

(Paragraph No. 1 of the agreement reserved to the Clines an overriding royalty interest of 1/16th of 7/8ths of all oil, gas and casinghead gas produced, saved and marketed under said leases.)

It appears the trial court determined the share of royalty to be paid was subject to a deduction for a share of the expenses, although no formula was set forth in either paragraph No. 9 of the agreement or in the court's journal entry by which the amount of expenses could be determined.

We are of the opinion the trial court erred in construing the reservation as requiring payment of royalty on helium gas repurchased from the pipeline purchaser and then extracted in and marketed from defendant's helium plant.

The true nature and character of a grant or reservation of oil and gas rights is not determined solely by the name or label attached thereto by the parties. It is determined by the intent of the parties as reflected by the terms or contents thereof. Where, however, an interest in oil and gas is labeled an "overriding royalty", the wording of the reservation of the interest must make it clear that it is something other than what the label indicates or the label will be considered as expressing the true intent of the parties. (*Magnusson v. Colorado Oil & Gas Corp.*, 183 Kan. 568, Syl. ¶ 4, 331 P. 2d 577.)

The reservation in the present case speaks of the interest reserved as being an overriding royalty. An overriding royalty is an interest or share of the oil actually produced and saved. It is generally understood an overriding royalty is delivered free of expense at the wellhead. In *Campbell v. Mako Corporation*, 195 Kan. 66, 402 P. 2d 771, this court said:

"An overriding royalty is a royalty interest carved out of the working interest created by an oil and gas lease. It is an interest in oil and gas produced at the surface free of the expense of production and its outstanding characteristic is that its duration is limited by the duration of the lease under which it is created." (Syl. ¶ 2.)

The provisions of paragraph 9 of the assignment contract which created the overriding royalty in helium are entirely consistent with the generally accepted nature attributed to an overriding royalty.

Paragraph 9 recognizes that gas is being sold by the producers in the area at the wellhead to pipeline companies without separate purchasers of or payments for the helium content in the natural gas. It provides for payment of an increased amount of royalty, from 1/16th of 7/8ths to 1/8th of 8/8ths of the helium. The increase is to go into effect only if the helium gas is separately marketed under a separate purchase contract and paid for at the wellhead. The royalty is limited to the life of the leases covered by the contract and is tied to a separate sale of the helium content by the producers in the field. The final statement in paragraph 9, as to the nature of the interest created, is that there shall be no obligation on Angle's part to separately account to Cline for any gas constituent, including helium unless it is separately marketed and paid for at the wellhead.

There was nothing in the reservation which would authorize deductions for the expenses of extraction and purification of the helium gas, as ordered by the court below. The owner of an overriding royalty is not required generally to pay expenses merely because he owns a share of production to be marketed at the wellhead. The trial court apparently disregarded the terms of the agreement of the parties and authorized deductions for expenses because of apparent inequities.

Words cannot be read into an agreement which impart an intent wholly unexpressed when the agreement was executed. (*In re Estate of Johnson,* 202 Kan. 684, 689, 452 P. 2d 286; *Duffin v. Patrick,* 212 Kan. 772, 512 P. 2d 442.)

If a written contract is ambiguous concerning a specific matter in the agreement, facts and circumstances existing prior to and contemporaneously with its execution are relevant to clarify the intent and purpose of the contract in that regard, but not for the purpose of varying and nullifying its clear and positive provisions. (*Weiner v. Wilshire Oil Co.,* 192 Kan. 490, 496, 389 P. 2d 803; *Skelly Oil Co. v. Savage,* 202 Kan. 239, 248, 447 P. 2d 395, 38 A. L. R. 3d 971.)

Subsequent conduct of parties to a contract may aid interpretation of controversial provisions. If parties to a contract, subsequent to its execution, have shown by their conduct that they have placed a common interpretation on the contract, this interpretation will be

given great weight in determining the meaning to be attributed to the provisions in question. (*Mosher v. Kansas Coop. Wheat Mkt. Ass'n.*, 136 Kan. 269, 15 P. 2d 421.) In addition instruments which are executed in the course of the same transaction concerning the same subject matter will be construed together by the court to determine the intent of the parties to the contract. (*West v. Prairie State Bank*, 200 Kan. 263, 436 P. 2d 402; *Bowen, Administrator v. Hathaway*, 202 Kan. 107, 446 P. 2d 723.)

It appears that Mr. Cline at various times has expressed his understanding that the helium royalty would accrue, if at all, on a separate sale of the known helium component in the natural gas when marketed by the producer and sold to the pipeline purchaser at the wellhead. This understanding was expressed by Mr. Cline in his discovery deposition as follows:

"Q. Did you consider the possibility that demand for helium and the Government Helium Plant might lead some pipeline purchasers to pay an additional separate price for helium at the wellhead?

"A. That was obviously the reason for wanting to receive compensation if and when it did happen.

"Q. And that is the reason you put this language in the contract in Paragraph Nine?

"A. Correct."

On May 26, 1961, Mr. Cline wrote a letter to the Bureau of Mines exploring the possibility of obtaining a separate payment for the helium content of the gas at the wellhead in event such an agreement could be worked out with the producer and the pipeline purchaser. This letter clearly indicates that Cline felt the royalty was dependent upon obtaining a separate payment for the known helium content of the gas at the wellhead.

A similar understanding by Mr. Cline as to the helium royalty was expressed in a division order covering the North half (N/2) of Section 22, Township 17 South, Range 17 West in Rush County, Kansas. When the order was executed by the Clines a special paragraph was added by them relating to the helium royalty, as follows:

". . . [I]f Kansas-Nebraska Natural Gas Co., Inc. shall ever account to Frontier Oil Company by a separate sale, separately accounted for, and for a separate price stated and paid for any helium that may be produced from this land, then, and in that event, separate helium division orders will be prepared and circulated for the distribution of such separate proceeds."

It is clear from this paragraph that Cline understood the royalty was for the helium component in the natural gas when separately sold, accounted for and separately priced at the wellhead. It was

specified that the royalty was to attach if Kansas-Nebraska, the pipeline purchaser, separately accounted to the producer, Frontier Oil Company, for helium content, because then and in that event a new division order would be necessary.

Another thing indicates that the parties intended the helium royalty to become due only if the helium component in the gas could be separately sold and marketed at the wellhead. The royalty was reserved from the rights in production created by oil and gas leases. The leases are solely concerned with production of oil and gas and not with processing. The corresponding rights in production under the lease are fulfilled when the oil or gas is brought to the surface and marketed.

It is difficult to see how the parties to a leasehold estate can create an interest in the helium component in natural gas which would continue after the gas is produced, purchased, resold and processed. The natural gas purchase contract under which Angle, the lessee-producer, sells and delivers the gas stream to the pipeline purchaser, Kansas-Nebraska, transfers the entire title and interest to the natural gas stream including the hydrocarbon, nonhydrocarbon elements and compounds, including helium. It is generally held that the purchase payments received by the lessee-producer from the pipeline purchaser constitutes payment for the entire natural gas stream measured and delivered under the contract including all constituents of the natural gas, including helium. (See *Northern Natural Gas Company v. Grounds*, 292 F. Supp. 619, 686 [Kan. 1968]; Reversed in part on other grounds, 441 F. 2d 704, [10th Cir. 1971].)

In the present case Kansas-Nebraska, the pipeline purchaser, acquired title to the entire natural gas stream including the helium content. We see nothing which would prevent Kansas-Nebraska from entering into a gas processing and sales agreement for a resale of the natural gas which was gathered in its system. It previously has such an agreement with the United States Bureau of Mines and we see no reason why Kansas-Nebraska's processing and sales agreement with George A. Angle, doing business as Kansas Refined Helium Company, would not transfer full legal title to the gas stream coming into his helium extraction and purification plant as well as full legal title to the helium gas extracted therefrom.

The trial court laid stress upon the fact that Angle was both the lessee-producer under the leases and the helium gas processor owning and operating the $7,000,000.00 helium extraction plant. We do not see why George A. Angle should not be considered as

operating in separate and distinct capacities, that of lessee-producer and as a purchaser-processor of helium. As lessee-producer he would remain obligated under his lease agreements and producer sales contracts and as a subsequent purchaser-processor he would be liable for his obligations incurred as purchaser-processor. We see no reason for extending his obligations as a lessee-producer beyond the initial production and sale to a later repurchase and processing merely because he is one individual operating two separate businesses.

The defendant, Angle, constructed a $7,000,000.00 plant to extract and purify helium from natural gas. Plaintiffs owned no part of this plant. When production from the wells in which the plaintiffs held a 1/16th of ⅞ths interest was accounted for and paid by the pipeline purchaser the plaintiffs had no further claim to the gas or its components.

It has been held that where gas and oil produced under a lease agreement has an established market value at the wellhead royalties paid to a lessor should be based on that value, not the value of products refined by the producer in a plant constructed at his own expense. In *Armstrong v. Skelly Oil Co.*, 55 F. 2d 1066 (5th Cir. 1932), lessees under an oil and gas lease erected a plant to extract gasoline from wet gas produced by the plaintiff-lessor's wells. The lessees paid royalties on the gas based on the market value of the gas, arriving at the amount thereof by measurement of the gas by meters at the wells. The lessor took the position that the royalty should be based on the actual sales price of gasoline extracted in the gasoline plant. The court held:

". . . Appellees were under no obligation to erect a plant to treat this gas. When they did so they were entitled to deal with the lessor the same as a stranger would have done. Had the gas been sold to an extracting plant, the lessee, under the universal custom of the trade, would have received returns identically the same as those made by appellees." (p. 1068.)

In the present case an analogous situation exists. The Clines should not be entitled to royalties based on helium extracted by appellant d/b/a Kansas Refined Helium Company.

At the time the assignment of leases was made and the helium royalty was reserved by Mr. and Mrs. Cline, no separate price was being paid for the helium content of any of the natural gas being marketed from the Reichel field. The defendant George A. Angle owned no helium reserves in the field. Angle did not construct the $7,000,000.00 helium plant until five years after the Clines acquired

their royalty. We do not believe that the parties intended for Angle to pay royalty on helium processed by him in a plant to be constructed and owned by him five years later. There was nothing in the agreement about sharing the expense of building and operating such a plant. Paragraph 12 of the lease assignment provided that nothing in that agreement should be construed to create a joint venture between Angle and Cline.

The partial summary judgment in favor of plaintiffs is reversed, the order denying summary judgment in favor of defendant is reversed and the case remanded to the district court with instructions to grant summary judgment against the plaintiffs and in favor of defendant.

SCHROEDER, J., dissenting: The court by its decision has completely nullified paragraph 9 of the lease assignment agreement between Wilford L. Cline and R. Leona Cline, assignor, and George A. Angle, assignee. The record discloses the parties were knowledgeable with gas in the Reichel gas field, knew its helium content and entered into a contract dealing with the helium content of the gas.

The impact of the court's decision is to recognize a subterfuge by Angle to defeat the overriding royalty provision for helium separately sold and accounted for, and for a separate price stated and paid. *Here the ingenious subterfuge employed to defeat the provision of the lease in question is a sale by the lessor-producer Angle to Kansas-Nebraska, and a sale back to Angle as purchaser and processor of the helium.*

On the court's theory of sale at the wellhead there could never be a reservation of helium separately marketed and paid for at the wellhead, because the helium is mixed with other gases and requires separation and processing before it can be separately marketed for a price stated and paid. The cost of separating and processing must be deducted to determine the market value of the helium at the wellhead. The helium overriding clause did not specify, nor was it by its terms otherwise contingent upon, *the place* where such sale occurred or title passed.

The Supreme Court has heretofore refused to give recognition to an ingenious subterfuge designed to free the owners of the leasehold estate of the burden of mechanic's and materialmen's liens against a block of oil and gas leases in *Adair v. Transcontinental Oil Co.,* 184 Kan. 454, 338 P. 2d 79.

Here the precise circumstances of the parties agreed upon have come to pass by the separation of helium which was separately sold.

The appellant contends the decision in this case hinges upon the definition of an overriding royalty, and the court has adopted the appellant's theory.

The trial court's findings of particular significance on the issues herein are:

"3. After the execution of the Agreement and in accordance therewith, Plaintiffs from time to time made, executed and delivered various assignments of their interests in certain oil and gas leases to and as required by Defendant. Thereafter, Defendant drilled producing gas wells on various of the leases thus assigned.

"In April, 1966, Defendant commenced operation of a helium extraction plant. No gas produced from the leases which Plaintiffs assigned as aforesaid was processed in Defendant's helium extraction plant until 1968. From time to time and continuing to date, substantially all of the gas produced from said leases has been gathered in Kansas-Nebraska Natural Gas Company's system and thereafter delivered to Defendant for processing in his helium extraction plant, under the terms of a contract between Defendant and Kansas-Nebraska. *The helium extracted from said gas in Defendant's plant is sold by Defendant to private parties under separate agreements and for a price unrelated to the wellhead price of the gas.*

"4. *By Paragraph No. 9 of their Agreement, the parties agreed, in effect and in law, that if Defendant were to profit from the sale of the helium contained in the gas produced from the aforesaid leases by Defendant's making a separate sale thereof in accordance with the conditions specified therein, then in such event Plaintiffs were to receive the additional overriding royalty provided by that paragraph.*

"The concluding lines of said paragraph of the Agreement, commencing after the semicolon with 'otherwise' to the end, are not limitations upon the foregoing portions of that paragraph. *Those concluding lines, and specifically their reference to 'the price of gas at the wellhead' have no significance in connection with the interpretation of the foregoing provisions of that paragraph.* The foregoing provisions of Paragraph No. 9, which control the instant case, provide that if the producers in the field should be able to sell, advantageously, the helium gas by a separate sale, separately accounted for and for a separate price stated and paid, then Plaintiffs were to receive the additional overriding royalty therein reserved unto them. *Defendant is a 'producer' within the meaning of the foregoing language. By Defendant's sales to third parties of helium extracted at his plant from gas produced from the aforesaid leases, Defendant is doing indirectly exactly what Paragraph No. 9 of the Agreement contemplated, i. e., selling advantageously the helium gas by a separate sale separately accounted for and for a separate price stated and paid. Plaintiffs are to be compensated under Paragraph No. 9 of the Agreement just the same, when Defendant acts indirectly in a manner contemplated thereby, as aforesaid, as if he were acting directly.*

"5. Plaintiffs' Motion for Pretrial Summary Judgment is granted and Plaintiffs are entitled to judgment on the issue of Defendant's liability to Plaintiffs pursuant to Paragraph No. 9 of the Agreement as a matter of law. Accordingly, Plaintiffs are granted judgment against Defendant for an accounting on all helium sold from gas produced from the aforesaid leases, and to payment in the principal amount calculated in accordance with Paragraph No. 9 of the Agreement." (Emphasis added.)

It is respectfully submitted the judgment of the learned trial judge should be affirmed.