**Debra LaDOW and Debra LaDow, Administrator of the Estate of Larry LaDow, Deceased, Plaintiffs,**

v.

**NEW ENGLAND MUTUAL LIFE INSURANCE COMPANY, Defendant.**

No. 87–4083–R.

United States District Court, D. Kansas.

Dec. 14, 1989.

James L. Bush, Windscheffel & Bush, Chtd., Smith Center, Kan., for plaintiffs.

Gerald L. Goodell, Goodell, Stratton, Edmonds & Palmer, Topeka, Kan., for defendant.

MEMORANDUM AND ORDER

ROGERS, District Judge.

This case is now before the court upon long-pending cross motions for summary judgment. This is an action for death benefits from a life insurance policy. The question to be decided is whether the policy was surrendered before or after the death of the insured. The following facts appear undisputed.

Larry LaDow took out a whole life policy with an accidental death rider from defendant on May 15, 1984. On June 6, 1986, he signed a "Substitute W–4P" form produced by defendant. The form lists his name, address and policy number. On the form, near the word "transaction," the box la-

belled "surrender" is marked. Then, the form indicates that Mr. LaDow did not want federal income tax withheld from the payment received from the surrender of the policy. Mr. LaDow had used a similar form to surrender a different policy he had with defendant in 1984.

Mr. LaDow delivered the form to the soliciting agent for defendant, Ms. Polly Stoecklein. On June 15, 1986, Mr. La-Dow's bank account was automatically debited for the monthly premium due on the policy. On June 16, 1986, the "Substitute W–4P" form was received in the office of Marc W. Colby, defendant's general agent in Wichita, Kansas. At this office on the same day, the information on the form was entered into defendant's computer system, and a message was sent via an electronic mailbox computer message system to defendant's home office, where the message was recorded.

On June 18, 1986, Larry LaDow was killed in an automobile accident. On June 19, 1986, defendant's home office issued a check payable to Larry LaDow for the surrender value of the policy. The check contained the following restrictive endorsement: "Endorsement of this check constitutes ratification of election to surrender the above contract(s)."

Regarding surrender, the insurance policy in question states:

> You can surrender the Policy for its Net Cash Value at any time by notice to the Company in writing. Upon surrender, the Policy will terminate. The Net Cash Value will be paid to you in one sum, unless you elect in writing to apply all or part of the Value to any Payment Option....
>
> The Company can postpone payment of the Net Cash Value for not more than six months after surrender.

The affidavit of Polly Stoecklein, the soliciting agent for defendant, states that as early as January 1986 she had conversations with Mr. LaDow regarding his desire to terminate by surrender the insurance policy. In Ms. Stoecklein's words, "On or about June 1, 1986 following an unsuccessful endeavor to conserve the policy, I mailed the form 'Substitute W–4P Non-Periodic Payments' PLBN–91–84A, to Ladow for completion." After Mr. LaDow completed the form, which Ms. Stoecklein describes in her affidavit as confirmation that surrender is requested, Ms. Stoecklein forwarded the form to defendant's general agent, Marc W. Colby in Wichita, Kansas.

Marc W. Colby entered a general agency contract with defendant on September 1, 1985. The contract specifically provides that a general agent "is forbidden to make, alter, or discharge any policies, contracts, or agreements on behalf of ... the Company." A month before, however, defendant issued an administrative policy giving authorization in writing to all general agents to process surrender transactions. According to the affidavit of Mr. Russell Sweet, defendant's assistant vice-president of claims services, the administrative policy applied to Marc W. Colby.[1] Colby was permitted to process the surrender of life insurance policies.

Under FED.R.CIV.P. 56, summary judgment shall be rendered if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." In ruling on a motion for summary judgment, it is the court's obligation to view the facts in the light most favorable to the adverse party and to allow the adverse party the benefit of all reasonable inferences to be drawn from the evidence. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970). Summary judgment is appropriate against a party who fails to make a showing sufficient to establish that there is a genuine issue for trial about an element essential to that party's case, and on which that party will bear the burden of proof at trial. *Celotex Corp. v. Catrett,*

---

1. Mr. Sweet's affidavit also states that the "Substitute W–4P" form is the only form necessary for an insured to surrender a policy.

477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986).

The moving party bears the initial burden of demonstrating by reference to portions of pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, the absence of genuine issues of material fact. *Id.* at 323, 106 S.Ct. at 2552. However, the moving party is not required to support its motion with affidavits or other similar materials negating the opponent's claim. *Id.* The nonmoving party is then required to go beyond the pleadings and by affidavits, depositions, answers to interrogatories and admissions on file, designate specific facts showing that there is a genuine issue for trial. *Id.*

A party opposing a properly supported motion for summary judgment cannot simply rest on allegations and denials in his pleading to get to a jury without any significant probative evidence tending to support the complaint. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256, 106 S.Ct. 2505, 2514, 91 L.Ed.2d 202 (1986). A genuine issue of material fact exists if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Id.* at 249, 106 S.Ct. at 2510. A mere scintilla of evidence in favor of the nonmoving party is insufficient to create a genuine issue of material fact and to avoid summary judgment. *Id.* at 252, 106 S.Ct. at 2512. "In essence ... the inquiry ... is ... "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided [or so lacking] that one party must prevail as a matter of law." *Id.* at 251–52, 106 S.Ct. at 2511–12; see also, *Celotex Corp. v. Catrett, supra,* 477 U.S. at 325, 106 S.Ct. at 2554.

■ The court believes defendant is entitled to summary judgment in this case. The insurance policy controls how cancellation can be effected—"at any time by notice to the Company in writing." The "Substitute W–4P" form was a written notice of surrender. A similar form was used by Mr. LaDow in 1984 to surrender a different life insurance policy with defendant.

Given this fact and the affidavits of Ms. Stoecklein and Mr. Sweet, the court believes the form represents an unequivocal intention to cancel the policy immediately after receipt of the form by the defendant. The policy does not require that a date of surrender be specifically noted. Nor is this a liability policy or a property policy where such a term might be expected. It is clear from the form that the transaction requested by Mr. LaDow was the surrender of the policy in return for its cash value.

■ Plaintiff has suggested that defendant's administrative policies require a written form in addition to a "Substitute W–4P" form for the surrender of a policy. These administrative policies, however, do not form the contract or the understanding between Mr. LaDow and defendant. The language of the policy controls. It clearly does not require two forms for the surrender of a policy. Moreover, the administrative policies are ambiguous and for that reason should be construed in light of the practice of the defendant and the affidavit of Mr. Sweet which clearly support the sufficiency of the "Substitute W–4P" as a notice of surrender.

■ The cancellation notice was received by the defendant, through its agent Marc W. Colby, on June 16, 1986. The receipt of the notice, alone, was sufficient for surrender because the policy creates a continuous and irrevocable offer of surrender for cash value. See *Pacific States Life Ins. Co. v. Bryce,* 67 F.2d 710 (10th Cir.1933). There has been some controversy over whether Marc W. Colby had authority to surrender the policy. We believe this is not a real issue. The policy makes an irrevocable offer to Mr. LaDow. By giving notice of surrender in writing to the defendant, the policy is surrendered. See *Lipman v. Equitable Life Assur. Society,* 58 F.2d 15, 18 (4th Cir.1932). Neither the defendant nor Marc W. Colby on behalf of the defendant had any authority to accept or reject the surrender once Mr. LaDow's written surrender request was received. Thus, Marc W. Colby took no action to discharge the policy. Mr. LaDow discharged the policy. Marc W. Colby merely received notice of

that fact and entered the data into the defendant's computer. It is clear that, regardless of the language of the general agency contract of September 1, 1985, Marc W. Colby had the authority to receive the surrender request on behalf of defendant and enter it into the defendant's computer system. The simple receipt of the notice by Marc W. Colby on behalf of defendant was effective to surrender the policy.

Even if the receipt of the notice by Marc W. Colby is considered an action by him to discharge or surrender the policy, the court believes Marc W. Colby had the authority to do so. The administrative policy established on August 1, 1985 and the conduct of the defendant and Colby may be considered in determining Colby's authority. See *Cline v. Angle*, 216 Kan. 328, 333–334, 532 P.2d 1093 (1975) (subsequent conduct of parties to a contract and instruments executed in the course of the same transaction may aid interpretation of controversial provisions); *Fast v. Kahan*, 206 Kan. 682, 684–85, 481 P.2d 958 (1971) (terms of a written contract may be varied, modified, waived, annulled or wholly set aside by subsequently executed contract in parol or in writing). As the affidavit of Mr. Sweet and the conduct of the Colby agency indicate, Marc W. Colby had the authority to surrender policies, if the processing of the surrender transaction was considered such.

Additionally, the court considers the electronic transmission of the surrender transaction to the defendant's home office on June 16, 1986 as delivery in writing of the surrender notice. This is further grounds for finding that the policy was surrendered prior to Mr. LaDow's death.

■ Plaintiff's position is not salvaged by the posthumous payment of the surrender value of the policy. The contract clearly permits a delay in paying the cash value of the policy following an effective surrender. The delay does nothing to destroy the meeting of the minds to surrender the policy when Mr. LaDow accepted the continuing offer of defendant. See *Pacific States Life Ins. Co. v. Bryce, supra; Lipman v. Equitable Life Assur. Society, supra.*

■ Finally, plaintiff suggests that the endorsement language on the check for the cash value of the policy represented a novation. We disagree. The language on the check is not an offer to continue life insurance coverage by substituting a new contract for the one Mr. LaDow surrendered. In any case, the check was made to Mr. LaDow who was deceased and could not agree to a new contract. The endorsement is simply a notice of ratification of a decision that did not need ratification. Mr. LaDow and plaintiff are bound by the written notice of surrender given to defendant.

In conclusion, defendant has sustained the burden of proving that Mr. LaDow cancelled the life insurance policy in question prior to his death. There is no material issue of fact which stands as an obstacle to this conclusion. Therefore, defendant's motion for summary judgment is granted.

IT IS SO ORDERED.